## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.,

       Plaintiff,

  v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,

       Defendant.

Civil Action No. 11-00604 (CKK)

## MEMORANDUM OPINION AND ORDER
### (January 27, 2012)

Judicial Watch, Inc. ("Judicial Watch") brings this Freedom of Information Act ("FOIA")

action against the United States Department of Homeland Security ("DHS"), seeking the

disclosure of records relating to recent changes in federal immigration enforcement priorities and

their implementation in Houston, Texas.  Currently before the Court is DHS's [12/13] Motion for

Summary Judgment.  Upon careful consideration of the parties' submissions, the relevant

authorities, and the record as a whole, the Motion shall be GRANTED-IN-PART and DENIED-

IN-PART.

## I.  BACKGROUND

This action has its origins in a national policy issued by United States Immigration and

Customs Enforcement ("ICE"), a component and an investigative arm of DHS, and the

subsequent response of the Houston ICE Office to that policy.

*A.      Factual Background*

On June 3, 2010, John Morton ("Morton"), the Assistant Secretary of ICE located in

Washington, D.C., distributed a four-page memorandum to all ICE employees concerning civil

1

immigration enforcement priorities for the apprehension, detention, and removal of aliens (the

"June 2010 National Policy Memorandum"). Def.'s Stmt. of Material Facts as to Which There Is

No Genuine Issue ("Def.'s Stmt."), ECF No. [13-5], ¶ 1.[1]  The June 2010 National Policy

Memorandum provides, in part:

> In addition to our important criminal investigative responsibilities,
> ICE is charged with enforcing the nation's civil immigration laws.
> This is a critical mission and one with direct significance for our
> national security, public safety, and the integrity of our border and
> immigration controls. ICE, however, only has resources to remove
> approximately 400,000 aliens per year, less than 4 percent of the
> estimated illegal alien population in the United States. In light of
> the large number of administrative violations the agency is charged
> with addressing and the limited enforcement resources the agency
> has available, ICE must prioritize the use of its enforcement
> personnel, detention space, and removal resources to ensure that
> the removals the agency does conduct promote the agency's
> highest enforcement priorities, namely national security, public
> safety, and border security.

DHS0001.[2]  The memorandum then proceeds to identify three enforcement priorities: (1)

"[a]liens who pose a danger to national security or a risk to public safety," (2) "[r]ecent illegal

entrants," and (3) "[a]liens who are fugitives or otherwise obstruct immigration controls."

DHS0001-0002.  However, the memorandum includes the following proviso: "[n]othing in this

memorandum should be construed to prohibit or discourage the apprehension, detention, or

removal of other aliens unlawfully in the United States," DHS0003—in other words, those aliens

falling outside the three categories of "higher priority" targets.  The memorandum addresses the

role of prosecutorial discretion in balancing enforcement priorities, providing that "[t]he rapidly

---

[1]  In its responsive statement of material facts, Judicial Watch admits the truth of each of the
factual allegations proffered by DHS and then proceeds to adduce two additional allegations of
its own that are, in actuality, nothing more than legal assertions. *See* Pl.'s Stmt. of Material Facts
as to Which There Is a Genuine Issue and Dispute Filed in Opp'n to Def.'s Mot. for Summ. J.,
ECF No. [14].

[2]  DHS's partial production of documents to Judicial Watch is Bates-stamped DHS0001 through
DHS0237 and is part of the record before the Court.  *See* FOIA Release, ECF No. [13-1].

increasing number of criminal aliens who may come to ICE's attention heightens the need for

ICE employees to exercise sound judgment and discretion consistent with these priorities when

conducting enforcement operations, making detention decisions, making decisions about release

on supervision . . . , and litigating cases."  DHS0004.

      Gary Goldman ("Goldman") is the Chief Counsel of the Office of Chief Counsel within

the Houston ICE Office ("OCC Houston"), one of twenty-six field offices around the country

that litigate cases in immigration court, counsel ICE operational clients, and provide direction

and support to United States Attorneys' Offices.  Def.'s Stmt. ¶¶ 7, 38.  On August 12, 2010,

Goldman issued a four-page memorandum to all attorneys in OCC Houston concerning the

exercise of prosecutorial discretion in his office (the "August 12, 2010 Memorandum").  *Id.* ¶ 7.

Goldman's memorandum begins by stating that "every attorney must determine whether [a] case

may be amenable to the exercise of prosecutorial discretion (PD) pursuant to guidelines outlined

in the [June 2010 National Policy Memorandum]."  DHS0009.  It then proceeds to direct

attorneys in OCC Houston to "file a Motion to Dismiss Proceedings . . . in clear [prosecutorial

discretion] cases," *id.*, and includes a model to use in such proceedings, DHS0013-0016.  The

memorandum also describes a process for the review of pending cases in the office, stating that

"[t]he goal of this attorney-wide tasking is to improve the overall efficiency of the removal

process by ensuring the only cases [OCC Houston] litigate[s] fall within the parameters of the

[June 2010 National Policy Memorandum]."  DHS0012.

      Goldman issued a supplemental two-page memorandum to OCC Houston attorneys on

August 16, 2010 (the "August 16, 2010 Memorandum").  Def.'s Stmt. ¶ 12.  Observing that the

June 2010 National Policy Memorandum altered the landscape for enforcement priorities, the

August 16, 2010 Memorandum identifies the need for "guidance as we strive to ensure

consistency in the application of and compliance with prosecutorial discretion policy."
DHS0017.  After identifying "case-specific questions," the memorandum provides:

> The answer to these questions and many others may be the same. We have been empowered with independent authority to exercise prosecutorial discretion.  We work not in a world of black and white but one of many shades of grey.  This is the beauty of prosecutorial discretion.   We do strive for consistency in application of process but the agency does not want to stifle our independent authority to exercise sound judgment in matters of prosecutorial discretion.

DHS0018.  The memorandum counsels that OCC Houston "must be selective in pursuing cases to ensure [its] prosecutions focus on cases of national security, public safety, criminal aliens and the other classes of ICE Priority cases."  DHS0017.

On August 20, 2010, Morton issued a second national policy memorandum offering new guidance on how to handle removal proceedings involving aliens with applications or petitions before United States Citizenship and Immigration Services (the "August 2010 National Policy Memorandum").  Def.'s Stmt. ¶ 15.  The memorandum outlines a framework for the expedited disposition of such removal proceedings, including their potential dismissal.  DHS0023.  It specifies that only removal cases meeting four criteria should be considered for potential dismissal: (1) the alien must be the subject of an application or petition for adjustment of status; (2) the alien must appear eligible for relief as a matter of law and in the exercise of discretion; (3) the alien, if required, must present a completed application to register permanent residence or adjust status; and (4) the alien must be eligible for adjustment of status.  DHS0025.  Even if an alien meets those criteria, the memorandum provides that "ICE may oppose relief on the basis of discretion."  *Id.*

On August 24, 2010, Goldman distributed the August 2010 National Policy Memorandum to his staff in OCC Houston via e-mail.  Def.'s Stmt. ¶ 18.  Goldman identified the

memorandum as "an agency priority" and simultaneously withdrew his own August 12, 2010 and August 16, 2010 Memoranda. DHS0028. According to the e-mail, "[e]ffective immediately," OCC Houston's "affirmative efforts regarding prosecutorial discretion [were] to focus on the class of cases outlined in the [August 2010 National Policy Memorandum]." *Id.*

On August 25, 2010, Riah Ramlogan, the Director of Field Legal Operations in ICE's Office of the Principal Legal Advisor ("OPLA")[3] sent a memorandum to Goldman addressing his interpretation of the June 2010 National Policy Memorandum, as reflected in his August 12, 2010 and August 16, 2010 Memoranda. Def.'s Stmt. ¶ 21. The memorandum provides:

> I understand that your office has implemented the memoranda you issued by terminating each case it identified that did not correspond to one or more of the three priorities identified in [the June 2010 National Policy Memorandum]. However, your implementation overlooks a key provision of that guidance, which makes clear that . . . ICE shall continue enforcing the law against other aliens as well. * * * Your approach that our attorneys should only litigate cases within the agency's highest priorities is not an accurate interpretation of the Assistant Secretary's guidance and is not consistent with agency policy.

DHS0029. Goldman was asked to rescind his August 12, 2010 and August 16, 2010 Memoranda. *Id.*

Goldman later responded by informing OPLA that he had already rescinded his August 12, 2010 and August 16, 2010 Memoranda, DHS0030, and explained that his "goal . . . was to improve the efficiencies of the removal process by utilizing [OCC Houston's] resources to ensure that the removals the agency does conduct promote the agency's highest enforcement priorities, namely national security, public safety, and border security," DHS0032.

---

[3]  OPLA provides legal advice, training, and services to support ICE's mission and defends the federal government's interests in administrative and federal courts. Def.'s Stmt. ¶ 37.

B.     *Procedural Background*

Judicial Watch submitted a FOIA request to DHS on August 30, 2010, seeking an array of records concerning the review and potential dismissal of pending immigration cases in Houston, Texas. Def.'s Stmt. ¶ 25. DHS acknowledged receipt of the request and subsequently conducted a thorough search for responsive records. *Id.* ¶¶ 26-36, 39-46.

Judicial Watch commenced this action on March 23, 2011. *See* Compl., ECF No. [1]. On May 27, 2011, DHS released 237 pages of spreadsheets, memoranda, and correspondence to Judicial Watch, releasing 46 pages in full and releasing 191 pages in part. Def.'s Stmt. ¶¶ 48, 50-51. As a basis for its partial withholding decisions, DHS cited FOIA Exemptions 5, 6, and 7(C). *Id.* ¶ 51. DHS did not withhold any records in full. *Id.* ¶ 49.

DHS filed the pending Motion for Summary Judgment on August 4, 2011. *See* Mem. of P. & A. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem."), ECF No. [13]. Included with DHS's Motion is an itemized index correlating each document with a specific exemption and the justification for non-disclosure, *see* Def.'s *Vaughn*[4] Index, ECF No. [13-4], as well as a declaration from the Deputy FOIA Officer in ICE's FOIA Office, *see* Decl. of Ryan Law ("Law Decl."), ECF No. [13-2]. Judicial Watch filed its opposition on August 26, 2011. *See* Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n"), ECF No. [14]. Judicial Watch elected not to cross-move for summary judgment. DHS filed its reply on September 16, 2011. *See* Def.'s Reply Mem. of P. & A. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Reply"), ECF No. [15]. Accordingly, the motion is fully briefed and ripe for adjudication. In an exercise of its discretion, the Court finds that holding oral argument would not be of assistance in rendering a decision. *See* LCvR 7(f).

---

[4] The reference is to the United States Court of Appeals for the District of Columbia's decision in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974).

## II. LEGAL STANDARD

Congress enacted FOIA to "pierce the veil of administrative secrecy and to open agency

action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)

(quotation marks omitted).   However, Congress remained sensitive to the need to achieve

balance between these objectives and the potential that "legitimate governmental and private

interests could be harmed by release of certain types of information." *Critical Mass Energy*

*Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (*en banc*) (quotation

marks omitted), *cert. denied*, 507 U.S. 984 (1993).   To this end, FOIA "requires federal agencies

to make Government records available to the public, subject to nine exemptions for categories of

material." *Milner v. Dep't of Navy*, __ U.S. __, 131 S. Ct. 1259, 1261-62 (2011).   Despite the

availability of such exemptions, "disclosure, not secrecy, is the dominant objective of the act."

*Rose*, 425 U.S. at 361.   For this reason, the "exemptions are explicitly made exclusive, and must

be narrowly construed." *Milner*, 131 S. Ct. at 1262 (quotation marks and citation omitted).

Summary judgment is proper when the pleadings, the discovery materials on file, and any

affidavits or declarations "show[] that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).   When presented with a

motion for summary judgment in this context, the district court must conduct a "de novo" review

of the record, 5 U.S.C. § 552(a)(4)(B), which "requires the court to ascertain whether the agency

has sustained its burden of demonstrating that the documents requested . . . are exempt from

disclosure," *Assassination Archives & Research Ctr. v. Cent. Intelligence Agency*, 334 F.3d 55,

57 (D.C. Cir. 2003) (quotation marks omitted).   "Consistent with the purpose of the Act, the

burden is on the agency to justify withholding requested documents," *Beck v. Dep't of Justice*,

997 F.2d 1489, 1491 (D.C. Cir. 1993), and only after an agency has proven that "it has fully

discharged its disclosure obligations" is summary judgment appropriate, *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983).   In ascertaining whether the agency has met its burden, the district court may rely upon agency affidavits or declarations.   *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).   "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone."   *Am. Civil Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011).   In other words, "[u]ncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail."   *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011).

## III.  DISCUSSION

The parties' dispute here is a narrow one.   Judicial Watch challenges only DHS's reliance upon FOIA Exemption 5 as a basis for withholding information from the spreadsheets, memoranda, and correspondence responsive to its request for records.[5]   Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."   5 U.S.C. § 552(b)(5).   Over the years, it has been construed as protecting "those documents, and only those documents, normally privileged in the civil discovery context."   *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).   It provides protection to "materials which would be protected under the attorney-client privilege, the attorney work-product privilege, or the executive 'deliberative

---

[5]   Judicial Watch does not contest the adequacy of DHS's search for records or the agency's reliance upon Exemptions 6 and 7(C) as a basis for non-disclosure.   *See* Def.'s Mem. at 7; Pl.'s Opp'n at 6 n.2.

process' privilege." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980) (citations omitted).

Under the federal common law, the proponent bears the burden of demonstrating the applicability of any asserted privilege. *In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*, 439 F.3d 740, 750 (D.C. Cir. 2006). The nature of that burden is clear: the proponent must establish the claimed privilege with "reasonable certainty." *Fed. Trade Comm'n v. TRW, Inc.*, 628 F.2d 207, 213 (D.C. Cir. 1980). To do so, the proponent must adduce competent evidence in support of "each of the essential elements necessary to support a claim of privilege." *Alexander v. Fed. Bureau of Investigation*, 192 F.R.D. 42, 45 (D.D.C. 2000). Consistent with these strictures, the proponent "must offer more than just conclusory statements, generalized assertions, and unsworn averments of its counsel." *In re Application of Veiga*, 746 F. Supp. 2d 27, 34 (D.D.C. 2010). Where the proponent fails to adduce sufficient facts to permit the district court to conclude with reasonable certainty that the privilege applies, its burden has not been met. *TRW*, 628 F.2d at 213.

In this case, DHS relies on three recognized privileges: (1) the attorney-client privilege; (2) the work product doctrine; and (3) the "deliberative process" privilege. The Court addresses each privilege in turn.

  *A.     The Attorney-Client Privilege*

"The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services," as well as "communications from attorneys to their clients if the communications rest on confidential information obtained from the client." *Tax Analysts v. Internal Revenue Serv.*, 117 F.3d 607, 618 (D.C. Cir. 1997)

(quotation marks omitted).  "In the governmental context, the 'client' may be the agency and the attorney may be the agency lawyer." *Id.*

In order to demonstrate the applicability of the privilege, the proponent must establish each of the following essential elements: (1) the holder of the privilege is, or sought to be, a client; (2) the person to whom the communication is made is a member of the bar or his subordinate and, in connection with the communication at issue, is acting in his or her capacity as a lawyer; (3) the communication relates to a fact of which the attorney was informed by his client, outside the presence of strangers, for the purpose of securing legal advice; and (4) the privilege has been claimed by the client. *In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984). Additionally, a "fundamental prerequisite to the assertion of the privilege" is "confidentiality both at the time of the communication and maintained since." *Coastal States*, 617 F.2d at 863; *accord Fed. Trade Comm'n v. GlaxoSmithKline*, 294 F.3d 141, 146 (D.C. Cir. 2002).

Judicial Watch contests DHS's reliance on the attorney-client privilege as a basis for withholding information from a total of seventeen documents—specifically, DHS0010, DHS0031-0035, DHS0053-0054, DHS0057, DHS0058-0059, DHS0062, DHS0063, DHS0064, DHS0065-0066, DHS0067-0068, DHS0069, DHS0070-0071, DHS0080-0081, DHS0082, DHS0085, DHS0093, and DHS0112. *See* Pl.'s Opp'n at 11. Judicial Watch contends that DHS's showing suffers from a fatal defect because "[n]owhere . . . does [DHS] specify that the withheld information was not also shared at some point with third parties." *Id.* The Court agrees. DHS, as the proponent of the attorney-client privilege, bears the burden of "affirmatively establish[ing] confidentiality." *Coastal States*, 617 F.2d at 863; *see also* Def.'s Reply at 9 (conceding that the agency must show that it was "reasonably careful to keep [the] confidential information protected from general disclosure.") (quotation marks omitted). However, DHS's

10

submissions fail to provide *any* basis for this Court to find that the confidentiality of the communications at issue has been maintained. *Coastal States*, 617 F.2d at 863. True, DHS's *Vaughn* Index and agency declaration recite other elements of the attorney-client privilege, but they do not speak of confidentiality in connection with the information withheld from Judicial Watch, even in conclusory terms.[6] *See* Def.'s *Vaughn* Index at 1, 3, 5-17; Law Decl. ¶ 34. In the final analysis, FOIA places the burden on the agency to prove the applicability of a claimed privilege, and this Court is not free to assume that communications meet the confidentiality requirement.[7] *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 254 (D.C. Cir. 1977). To the extent DHS intends to rely on the attorney-client privilege as a basis for non-disclosure, it must affirmatively show confidentiality. The Court shall not prejudge what form that showing must take, other than to say that DHS must adduce competent evidence establishing "confidentiality both at the time of the communication and maintained since." *Coastal States*, 617 F.2d at 863.

But there is a more far-reaching problem with DHS's showing, one that effectively prevents the Court from concluding that the agency has "fully discharged its disclosure obligations." *Weisberg*, 705 F.2d at 1350. In identifying its justification for withholding information pursuant to the attorney-client privilege, DHS's *Vaughn* Index simply parrots selected elements of the attorney-client privilege. Almost without exception, DHS asserts, without further elaboration, that "the attorney-client privilege appl[ies] because this document was created by agency attorneys . . . to provide legal analysis and advice." Nor does cross-

---

[6] The Court does not credit the unsworn averments of DHS's counsel.

[7] That is especially true where, as here, an agency cites the attorney-client privilege as a basis for withholding communications running from the attorney to the client, which are eligible for protection only if they rest on confidential information obtained from the client. *See Tax Analysts*, 117 F.3d at 618.

referencing DHS's separate declaration elucidate matters further. There, in a single, unilluminating paragraph, DHS's declarant broadly asserts that "communications between an [sic] ICE attorneys and ICE employees" have been withheld and that "[t]he communications consisted of an attorney or employee providing information for the purpose of seeking legal advice and counsel rendering advice." Law Decl. ¶ 34. Even when situating these descriptions within the context of DHS's partial production, "the descriptions of the documents are so brief and of such a general nature that they fail to give the court any basis for determining whether the privilege was properly invoked." *Alexander*, 192 F.R.D. at 45.

Three of the more egregious examples will illustrate the problem. First, DHS0057 is a one-page memorandum to Goldman from his Deputy Chief Counsel in OCC Houston. Apart from the subject line, which reads "Prosecutorial Discretion," everything substantive has been redacted from the document. Neither DHS's *Vaughn* Index nor its agency declaration provide any meaningful context, leaving the Court with what amounts to little more than a conclusory claim of privilege. Second, DHS0058-0059 is a two-page excerpt from OCC Houston's Procedural Manual addressing the exercise of prosecutorial discretion. DHS does not even identify the author(s) and recipient(s), let alone explain the circumstances surrounding the communication. Under these circumstances, the Court cannot meaningfully judge whether the privilege applies. Third, and finally, DHS0064 is a one-page e-mail from Goldman to approximately two dozen recipients, the identities of the vast majority of which are left unstated. The subject line of the e-mail reads, "Notes from Leadership meeting," and the first line of the body states, "This is how the various presenters presented their messages to us." The remainder of the message has been redacted and DHS's *Vaughn* Index and agency declaration provide no

further context, again leaving the Court with what effectively amounts to a conclusory claim of privilege.

In the end, DHS's generalized and non-specific showing fails to satisfy the Court that the attorney-client privilege has been properly invoked in connection with the information withheld from Judicial Watch. For this reason, the Court shall DENY DHS's [12/13] Motion for Summary Judgment insofar as it seeks a ruling that information has been appropriately withheld from DHS0010, DHS0031-0035, DHS0053-0054, DHS0057, DHS0058-0059, DHS0062, DHS0063, DHS0064, DHS0065-0066, DHS0067-0068, DHS0069, DHS0070-0071, DHS0080-0081, DHS0082, DHS0085, DHS0093, and DHS0112 on the basis of the attorney-client privilege.

Where, as here, an agency's descriptions fail to affirmatively establish each of the essential elements of the claimed privilege, the district court has the discretion to order disclosure or to afford the agency an additional opportunity to fully discharge its burden. In this case, the Court is mindful that Judicial Watch has not cross-moved for summary judgment and, even based on the limited record now before the Court, it appears that DHS likely has viable privilege claims to assert in this action. Accordingly, the Court shall exercise its discretion to permit DHS a further and final opportunity to establish the applicability of the attorney-client privilege to the information withheld from Judicial Watch.

    *B.*     *The Work Product Doctrine*

The work product doctrine protects materials "prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." FED. R. CIV. P. 26(b)(3)(A). In assessing whether the proponent has carried its burden, the relevant inquiry is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have

been prepared or obtained because of the prospect of litigation." *Equal Emp't Opportunity Comm'n v. Lutheran Soc. Servs.*, 186 F.3d 959, 968 (D.C. Cir. 1999) (quotation marks omitted). This inquiry encompasses two related but distinct concepts—one a question of timing and the other a question of intent. *U.S. ex rel. Fago v. M & T Mortg. Corp.*, 242 F.R.D. 16, 18 (D.D.C. 2007). The former, the temporal element, asks whether there was "a subjective belief that litigation was a real possibility" at the time the document was prepared and whether that belief was "objectively reasonable." *Lutheran Soc. Servs.*, 186 F.3d at 968 (quotation marks omitted). The latter, the motivational element, demands that the document be prepared or obtained *because of* the prospect of litigation. *Id.* In this respect, the proponent bears the burden of "showing that the documents were prepared for the purpose of assisting an attorney in preparing for litigation, and not some other reason." *Alexander*, 192 F.R.D. at 46. "[T]he documents must at least have been prepared with a specific claim supported by concrete facts which would likely lead to litigation in mind." *Coastal States*, 617 F.2d at 865. In this Circuit, "[i]f a document is fully protected as work product, then segregability is not required." *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 371 (D.C. Cir. 2005).[8]

Judicial Watch contests DHS's reliance on the work product doctrine as a basis for withholding information from a total of twenty documents—specifically, DHS0010, DHS0031-0035, DHS0053-0054, DHS0057, DHS0058-0059, DHS0062, DHS0063, DHS0064, DH0065-0066, DHS0067-0068, DHS0069, DHS0070-0071, DHS0080-0081, DHS0082, DHS0085, DHS0093, DHS0112, DHS0201-0202, DHS0203-0235, and DHS0236-0237. *See* Pl.'s Opp'n at 6-8. In so doing, Judicial Watch divides its argument between three spreadsheets relating to

---

[8] In the civil discovery context, the work product privilege is qualified and may be overcome by a showing of "substantial need." FED. R. CIV. P. 26(b)(3)(A)(ii). However, that limitation does not apply under FOIA. *Williams & Connolly v. Secs. & Exch. Comm'n*, 662 F.3d 1240, 1243 (D.C. Cir. 2011).

immigration cases handled by OCC Houston, on the one hand, and an array of memoranda and

communications, on the other hand.  The Court shall likewise divide its analysis.

>    1.    Spreadsheets

The focus of Judicial Watch's challenge is three spreadsheets relating to immigration

cases handled by OCC Houston—specifically, DHS0201-0202, DHS0203-0235, and DHS0236-

0237.  *See* Pl.'s Opp'n at 6-7.  The information in these spreadsheets was compiled as part of

OCC Houston's efforts to conform to the June 2010 and August 2010 National Policy

Memoranda, and in particular the office's efforts to determine which pending and reasonably

foreseeable immigration cases, if any, were candidates for potential dismissal consistent with the

exercise of prosecutorial discretion.[9]  The information withheld appears in columns labeled

"Basis(es) for Seeking Dismissal," DHS201-0202, "Reason for filing Motion," DHS0203-0235,

"Type of Review," DHS0203-0235, "Basis of Motion," DHS0236-0237, and "Brief Explanation

(and Other Notes)," DHS0236-0237.  In its submissions, DHS specifically represents that the

information in these columns was "derived entirely from attorney notes" that were made in

preparation for litigation.  Law Decl. ¶ 36; *see also* Def.'s *Vaughn* Index at 17-18 (stating that

each field contains information prepared by agency attorneys in anticipation of potential

litigation and to provide legal analysis and advice).

---

[9]    While it is ultimately immaterial to the instant motion, the three spreadsheets differ slightly in their precise content.  The first spreadsheet sets forth information identifying the location of the proceeding and the alien involved, all of which has been disclosed, while a final column, which has been redacted, appears to identify the alien's past criminal convictions.  DHS0201-0202. The second spreadsheet sets forth information identifying the proceeding, the alien and counsel involved, the relief sought by the alien, the status of OCC Houston's motion to dismiss, and the alien's response to the motion, all of which has been disclosed, while two columns identifying the reason for the filing of the motion and the type of review conducted have been withheld from disclosure.  DHS0203-0235.  The third spreadsheet, titled "Motions to Terminate Filed by OCC (Fiscal Year 2011)," identifies the proceeding, the alien and office involved, and the status of OCC Houston's motion to dismiss, all of which has been disclosed, while two columns identifying the basis of the motion and a brief explanation have been redacted.  DHS0236-0237.

Judicial Watch offers two arguments in favor of the disclosure of the information in the spreadsheets. First, Judicial Watch contends that the information was not prepared "in anticipation of litigation." The thrust of Judicial Watch's argument is this: (i) "the entire point of [DHS's] new policy was to terminate as much litigation as possible by dismissing cases against certain immigrants," (ii) the information in the spreadsheets was gathered to decide whether to terminate litigation, (iii) therefore, the information was not prepared "in anticipation of litigation." Pl.'s Opp'n at 6. The argument lacks merit. Material may still be said to be prepared "in anticipation of litigation" even when an attorney is deciding whether or not to pursue a case, including under circumstances analogous to those presented here. *See, e.g., A. Michael's Piano, Inc. v. Fed. Trade Comm'n*, 18 F.3d 138, 145 (2d Cir.) (concluding that the work product doctrine still applied to documents prepared after government counsel "decided not to recommend enforcement litigation"), *cert. denied*, 413 U.S. 1015 (1994); *Kishore v. U.S. Dep't of Justice*, 575 F. Supp. 2d 243, 259-60 (D.D.C. 2008) (concluding that the work product doctrine applied to records explaining the government's reasons for declining to prosecute); *Heggestad v. U.S. Dep't of Justice*, 182 F. Supp. 2d 1, 10 (D.D.C. 2000) (rejecting argument that documents recommending the declination of prosecution are not subject to work product doctrine); *cf. Cities Serv. Co. v. Fed. Trade Comm'n*, 627 F. Supp. 827, 832 (D.D.C. 1984) (finding that materials relating to potential settlement are eligible for work product protection), *aff'd*, 778 F.2d 889 (D.C. Cir. 1985). DHS has satisfied its burden of showing that the information was prepared in anticipation of the pending and reasonably foreseeable immigration cases handled by OCC Houston.

Judicial Watch's second argument fares no better. Here, similar to the argument it made with respect to the attorney-client privilege, Judicial Watch argues that DHS "has failed to

demonstrate that the information contained in these documents has not been shared with third parties." Pl.'s Opp'n at 7.  As with the attorney-client privilege, disclosure may waive the protections of the work product doctrine.  However, courts employ a slightly different inquiry in this context.  When it comes to the work product doctrine, disclosure to a third party constitutes a waiver when the disclosure is made under circumstances inconsistent with the maintenance of secrecy from one's adversary.  *United States v. Deloitte LLP*, 610 F.3d 129, 140 (D.C. Cir. 2010).  Pursuant to this so-called "maintenance of secrecy" standard, courts inquire whether the proponent "had a reasonable basis for believing that the recipient would keep the disclosed material confidential."  *Id.* at 141; *accord Rockwell Int'l Corp. v. U.S. Dep't of Justice*, 235 F.3d 598, 605 (D.C. Cir. 2001).

DHS mischaracterizes Judicial Watch's argument as one arising under the "prior disclosure" doctrine frequently encountered in FOIA jurisprudence, which provides that "[i]f the government has officially acknowledged information, a FOIA plaintiff may compel disclosure of that information even over an agency's otherwise valid exemption claim."  *Am. Civil Liberties Union*, 628 F.3d at 620.  Were this Judicial Watch's argument, the Court agrees that Judicial Watch would bear the burden of meeting the rigors of the "prior disclosure" doctrine, which requires the plaintiff to show that the specific information he seeks is already in the public domain by an official disclosure.  The Court would also agree that Judicial Watch has not met this exacting standard.  But Judicial Watch's argument is different.  It is targeted to DHS's antecedent burden, as the proponent of the privilege, to establish the applicability of the work product doctrine.  *See* Pl.'s Opp'n at 7.

Nonetheless, DHS's essential point is correct: the burden lies with Judicial Watch to establish that DHS has waived the protections of the work product doctrine.  That is because, in

contrast to the attorney-client privilege, the proponent of the work product doctrine does not bear the burden of proving non-waiver.[10] *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 379 n.10 (5th Cir. 2010); *accord U.S. Inspection Servs., Inc. v. NL Engineered Solutions, LLC*, 268 F.R.D. 614, 617-18 (N.D. Cal. 2010); *Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers, L.L.C.*, 202 F.R.D. 418, 423 (E.D. Pa. 2001); *Johnson v. Gmeinder*, 191 F.R.D. 638, 643 (D. Kan. 2000); *Aull v. Cavalcade Pension Plan*, 185 F.R.D. 618, 624 (D. Colo. 1998). Instead, the party seeking to pierce the privilege must show that the holder of the privilege disclosed work product to a third party under circumstances "inconsistent with the maintenance of secrecy from the disclosing party's adversary." *Deloitte*, 610 F.3d at 140 (quotation marks omitted). Judicial Watch has failed to discharge this burden, offering only its unadorned speculation that DHS "obviously had some communication with the [affected immigrant] about the content and reason[s] for the motion" and that "[i]t is possible that some of the information contained in these spreadsheets has been shared with [immigration attorneys in the Houston area] as well." Pl.'s Opp'n at 7. Despite the conjecture from its counsel, Judicial Watch does not adduce *any* competent evidence to support a finding that the specific information redacted from the three spreadsheets was shared with third parties under circumstances inconsistent with the maintenance of secrecy. Accordingly, its waiver argument fails.

In short, Judicial Watch has failed to identify a colorable basis for rejecting DHS's claim that the work product privilege applies to the information withheld from the three spreadsheets. Meanwhile, DHS has proffered a sufficient factual basis for this Court to conclude that, in light

---

[10] The difference in treatment is in part a product of the different purposes served by the two privileges: whereas the attorney-client privilege "protects the attorney-client relationship by safeguarding confidential communications, [the work product doctrine] promotes the adversary process by insulating an attorney's litigation preparation from discovery." *Deloitte*, 610 F.3d at 139-40.

of the nature of the spreadsheets and the factual situation in this case, the information withheld

can "fairly be said to have been prepared or obtained because of the prospect of litigation."

*Lutheran Soc. Servs.*, 186 F.3d at 186 (quotation marks omitted).  Therefore, the Court shall

GRANT DHS's [12/13] Motion for Summary Judgment insofar as it seeks a ruling that

information has been appropriately withheld from DHS0201-0202, DHS0203-0235, and

DHS0236-0237 on the basis of the work product doctrine.

      2.    <u>Memoranda and Other Communications</u>

      Judicial Watch also challenges DHS's reliance upon the work product doctrine as a basis

for withholding information from an array of memoranda and other communications—

specifically, DHS0010, DHS0031-0035, DHS0053-0054, DHS0057, DHS0058-0059, DHS0062,

DHS0063, DHS0064, DH0065-0066, DHS0067-0068, DHS0069, DHS0070-0071, DHS0080-

0081, DHS0082, DHS0085, DHS0093, and DHS0112.  *See* Pl.'s Opp'n at 7-8.  As before,

Judicial Watch claims that the information in these documents must be disclosed because DHS

"has failed to show that they were prepared in anticipation of litigation and because nowhere . . .

does [DHS] state that these documents were never shared with third parties."  *Id.*  For the reasons

just discussed, the Court is unpersuaded by Judicial Watch's waiver argument.  Nonetheless, the

Court finds that DHS's evidentiary showing is so generalized and non-specific as to these

memoranda and communications that it fails to satisfy the Court that the work product doctrine

has been properly invoked as a basis for non-disclosure.

      Just as it did with the attorney-client privilege, DHS's *Vaughn* Index simply parrots

elements of the work product doctrine when identifying its justification for withholding

information.  Almost without exception, DHS asserts, without any meaningful measure of detail,

that the "work-product privilege . . . appl[ies] because this document was created by agency

attorneys in anticipation of potential litigation, to provide legal analysis and advice." True,

DHS's separate declaration provides a little more detail, separating the memoranda and

communications into eight general categories, *see* Law Decl. ¶ 36, but DHS fails to correlate

these categories to specific records identified in its *Vaughn* Index. Even if it had, the

descriptions of some of these categories are so generic that, even when they are considered

alongside DHS's partial production, they do not demonstrate that the information withheld can

"fairly be said to have been prepared or obtained because of the prospect of litigation." *Lutheran*

*Soc. Servs.*, 186 F.3d at 186 (quotation marks omitted).

For example, one of the categories identified by DHS includes information involving

"discussions on litigation strategies . . . centering around prosecutorial discretion." Law Decl. ¶

36. This Court is "mindful of the fact that the prospect of future litigation touches virtually every

object of a prosecutor's attention, and that the work product exemption, read over-broadly, could

preclude almost all disclosure from an agency with responsibilities for law enforcement."

*SafeCard Servs., Inc. v. Secs. & Exch. Comm'n*, 926 F.2d 1197, 1203 (D.C. Cir. 1991) (quotation

marks and citation omitted). Absent a more particularized showing from DHS, the Court cannot

conclude that DHS has applied the appropriate standard in this case: at a minimum, "the

documents must at least have been prepared with a specific claim supported by concrete facts

which would likely lead to litigation in mind." *Coastal States*, 617 F.2d at 865.

Illustrative in this regard is DHS0057, a one-page memorandum to Goldman from his

Deputy Chief Counsel in OCC Houston. Apart from the subject line, which reads "Prosecutorial

Discretion," everything substantive has been redacted from the document. DHS's *Vaughn* Index

provides no meaningful elaboration on the nature of the document and the Court is left to

speculate as to which of the eight categories, if any, that are identified in DHS's agency

declaration might apply.  In essence, the Court is left with a conclusory claim that the work

product doctrine applies, but nobody disputes that "conclusory assertions of privilege will not

suffice."  *Coastal States*, 617 F.2d at 861; *see also Senate of the Commonwealth of P.R. v. U.S.

Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987) ("[W]here no factual support is provided for

an essential element of the claimed privilege or shield, the label 'conclusory' is surely apt.")

(emphasis omitted).

Simply put, DHS's generalized and non-specific showing fails to satisfy the Court that

the work product doctrine has been properly invoked in connection with the information

withheld from Judicial Watch.  For this reason, the Court shall DENY DHS's [12/13] Motion for

Summary Judgment insofar as it seeks a ruling that information has been appropriately withheld

from DHS0010, DHS0031-0035, DHS0053-0054, DHS0057, DHS0058-0059, DHS0062,

DHS0063, DHS0064, DH0065-0066, DHS0067-0068, DHS0069, DHS0070-0071, DHS0080-

0081, DHS0082, DHS0085, DHS0093, and DHS0112 on the basis of the work product doctrine.

As before, the Court shall afford DHS a further and final opportunity to establish the

applicability of the work product doctrine to the information withheld from these documents.

C.      *The Deliberative Process Privilege*

The deliberative process privilege protects "documents reflecting advisory opinions,

recommendations and deliberations comprising part of a process by which governmental

decisions and policies are formulated."  *Dep't of Interior v. Klamath Water Users Protective

Ass'n*, 532 U.S. 1, 8 (2001) (quotation marks omitted).  It recognizes "that officials will not

communicate candidly among themselves if each remark is a potential item of discovery and

front page news, and its object is to enhance the quality of agency decisions by protecting open

and frank discussion among those who make them."  *Id.* at 8-9 (quotation marks and citations

omitted).  The privilege is designed to "protect the executive's deliberative processes—not to

protect specific materials."  *Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565,

1568 (D.C. Cir. 1987).  To qualify for protection under the privilege, materials must be "both

'predecisional' and 'deliberative.'"  *Pub. Citizen, Inc. v. Office of Mgmt. and Budget*, 598 F.3d

865, 874 (D.C. Cir. 2010) (quoting *Coastal States*, 617 F.2d at 866).  A document is

predecisional "if it was generated before the adoption of an agency policy and deliberative if it

reflects the give-and-take of the consultative process."  *Judicial Watch, Inc. v. Food & Drug

Admin.*, 449 F.3d 141, 151 (D.C. Cir. 2006) (quotation marks omitted).  To be deliberative,

information "must reflect the personal opinions of the writer rather than the policy of the

agency."  *Morley v. Cent. Intelligence Agency*, 508 F.3d 1108, 1127 (D.C. Cir. 2007) (quotation

marks omitted).

Judicial Watch challenges DHS's reliance upon the deliberative process privilege as a

basis for withholding information from a total of seventeen documents—specifically DHS0030,

DHS0031-0035, DHS0046, DHS0053-0054, DHS0056, DHS0057, DHS0063, DHS0064,

DHS0065-0066, DHS0067-0068, DHS0069, DHS0070-0071, DHS0080-0081, DHS0082,

DHS0085, DHS0093, and DHS0112.  *See* Pl.'s Opp'n at 9.  Judicial Watch tenders a series of

arguments why disclosure of the information redacted from these documents is appropriate,

including a contention that DHS has failed to release all reasonably segregable information.  *See

id.* at 9-10.  In this regard, the Court shares Judicial Watch's concern.

In contrast to the work product doctrine, "[f]actual material is not protected under the

deliberative process privilege unless it is 'inextricably intertwined' with the deliberative

material."  *Judicial Watch*, 432 F.3d at 372 (quoting *In re Sealed* Case, 121 F.3d 729, 737 (D.C.

Cir. 1997)).  Here, DHS avers generally in its submissions that it conducted a "line-by-line"

review of its entire release and disclosed all reasonably segregable, non-exempt information. Law Decl. ¶ 45.  In addition, DHS represents that the communications withheld under the deliberative process privilege are "largely opinion," but the agency concedes that "they also contain some factual material selected by the authors which [sic] are [sic] 'inextricably intertwined' with deliberative material that its disclosure would compromise the confidentiality of deliberative information." *Id.* ¶ 31.  This empty invocation of the segregability standard, which DHS never couples with a more detailed representation relating to specific records, does not satisfy the Court that DHS has applied the correct standard.

Indeed, without deciding the matter, the Court's review of DHS's partial production reveals that there is some cause for concern.  For example, DHS0053-0054 is a two-page memorandum from Goldman to a superior in OPLA accompanying one of the spreadsheets relating to immigration cases handled by OCC Houston.  On the first page of the memorandum, Goldman sets forth a summary of the data in the spreadsheets.  DHS0053.  DHS does not appear to dispute that this information is "factual" in nature, but it makes no meaningful effort to explain why the information is inextricable from deliberative material or how its disclosure would reveal "advisory opinions, recommendations [or] deliberations comprising part of a process by which governmental decisions and policies are formulated." *Klamath*, 532 U.S. at 8. Where DHS has withheld factual information under the deliberative process privilege, the Court requires a more nuanced explanation as to why the information is inextricable from deliberative material.  DHS may not simply parrot the legal standard governing segregability.

Moreover, the Court agrees with Judicial Watch that DHS has failed to provide sufficient factual context for much of the information withheld under the deliberative process privilege to allow the Court to conclude that the privilege has been properly invoked.  In its *Vaughn* Index,

DHS consistently recites the general elements of the deliberative process privilege without explaining how they apply to the document in question.  While DHS's separate declaration divides the documents withheld on this basis into four general categories, Law Decl. ¶ 31, DHS never correlates these categories to specific records identified in its *Vaughn* Index.  Oftentimes, the descriptions are so generic and non-specific that, even when considered alongside DHS's partial production, the Court cannot meaningfully assess whether the information withheld is predecisional and deliberative.

For example, DHS0046 is a one-page e-mail from Goldman to one of his superiors in OPLA.  The e-mail's subject line reads, "Discussion," the first line states, "I know how busy you must be so I thought I would simply write you a very brief email to clarify one issue," and the final line provides, "Thanks for supporting the field."  DHS0046.  In its *Vaughn* Index, DHS merely recites legal boilerplate about the deliberative process privilege, *see* Def.'s *Vaughn* Index at 4, and the Court is left to guess which, if any, of the four categories identified in the separate declaration might apply, *see* Law Decl. ¶ 31.  When all is said and done, the Court is left with DHS's naked claim that the privilege has been properly invoked, and this obviously does not suffice.

In light of these concerns about the adequacy of DHS's descriptions and its application of the segregability standard, which at least theoretically could affect all of DHS's withholding decisions under the deliberative process privilege, the Court declines to rule on the merits of any of DHS's withholding decisions at this time.  DHS shall first be afforded an opportunity to provide a more particularized evidentiary showing.  Nonetheless, the Court takes this opportunity to address some of the other issues raised by the parties in the hopes of narrowing the areas of dispute in the future.

First, Judicial Watch appears to argue that "the deliberative process privilege is a 'qualified privilege and can be overcome by a showing of sufficient need.'" Pl.'s Opp'n at 9 (quoting *In re Sealed* Case, 121 F.3d at 737). While this is an accurate statement of the law, Judicial Watch conveniently omits an important proviso—namely, that "[t]his characteristic of the deliberative process privilege is not an issue in FOIA cases." *In re Sealed Case*, 121 F.3d at 737 n.5. The reasons for this limitation are two-fold. On the one hand, FOIA's exclusive concern is with what must and must not be made public and, as a result, the general rule is that "the particular purpose for which a FOIA plaintiff seeks information is not relevant." *Id.* On the other hand, an interpretation of Exemption 5 that would require courts to balance a private litigant's need against an agency's privilege claim in some "hypothetical litigation" would be unworkable. *Sears*, 421 U.S. at 149 n.16. Accordingly, the relevant question in this context is whether the information subject to the privilege claim would "normally" or "routinely" be disclosed in private litigation.

Second, Judicial Watch fails to recognize that even documents dated after a decision has been made may still be eligible for protection under the deliberative process privilege. Courts recognize that "[a]gencies are, and properly should be, engaged in a continuing process of examining their policies" and should be "wary of interfering with this process." *Sears*, 421 U.S. at 151 n.18. Even after a path has been cut by an agency, "it is the very process of debating, shaping, and changing a . . . policy that needs candor, vigorous to-and-fro, and freedom of expression." *Sierra Club v. U.S. Dep't of Interior*, 384 F. Supp. 2d 1, 16 (D.D.C. 2004); *see also Gordon v. Fed. Bureau of Investigation*, 388 F. Supp. 2d 1028, 1038 (N.D. Cal. 2005) ("That an agency is 'deliberating' on whether or how to change an existing policy, as opposed to deliberating on whether to adopt an entirely new policy, does not mean the deliberations fall

25

outside the privilege."). For this reason, documents dated after one decision has been made "may still be predecisional and deliberative with respect to other, nonfinal agency policies." *Judicial Watch*, 449 F.3d at 151.  Furthermore, while "[a] document that does nothing more than explain an existing policy cannot be considered deliberative," *Pub. Citizen*, 598 F.3d at 876, even "[p]ost-decisional documents properly fall under the deliberative process privilege when they recount or reflect pre-decisional deliberations," *Judicial Watch Inc. v. U.S. Dep't of Treasury*, 796 F. Supp. 2d 13, 31 (D.D.C. 2011) (citing *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 658 F. Supp. 2d 217, 234 (D.D.C. 2009)).

Third, and finally, Judicial Watch intimates that the Court should inquire whether the disclosure of specific information would harm the interests animating the deliberative process privilege. *See* Pl.'s Opp'n at 8-9.  However, "Congress enacted FOIA Exemption 5 . . . precisely because it determined that the disclosure of material that is both predecisional and deliberative *does* harm an agency's decisionmaking process," and it is not the district court's "role . . . to second-guess that congressional judgment on a case-by-case basis." *McKinley v. Bd. of Governors of Fed. Reserve Sys.*, 647 F.3d 331, 339 (D.C. Cir. 2011), *cert. denied*, __ U.S. __, 2012 WL 33340 (Jan. 9, 2012).  As a result, the scope of this Court's inquiry is properly confined to asking whether DHS has satisfied its burden of showing the applicability of the privilege—that is, whether the information withheld is both predecisional and deliberative.  Once that inquiry is complete, the Court's task is at an end.

Regardless, the Court reiterates that it declines to rule on the merits of DHS's decision to withhold certain information under the deliberative process at this time.  DHS's generalized and non-specific showing fails to satisfy the Court that the deliberative process has been properly invoked or that DHS has applied the correct segregability standard.  Accordingly, the Court shall

DENY DHS's [12/13] Motion for Summary Judgment insofar as it seeks a ruling that

information has been appropriately withheld from DHS0030, DHS0031-0035, DHS0046,

DHS0053-0054, DHS0056, DHS0057, DHS0063, DHS0064, DHS0065-0066, DHS0067-0068,

DHS0069, DHS0070-0071, DHS0080-0081, DHS0082, DHS0085, DHS0093, and DHS0112 on

the basis of the deliberative process privilege. As before, the Court shall afford DHS a further

and final opportunity to establish that the deliberative process privilege applies to the

information withheld from these documents and that all reasonably segregable information has

been released to Judicial Watch.

## IV. CONCLUSION AND ORDER

For the reasons set forth above, it is, this 27th day of January, 2012, hereby

**ORDERED** that DHS's [12/13] Motion for Summary Judgment is GRANTED-IN-

PART and DENIED-IN-PART. Specifically, the motion is GRANTED insofar as it seeks a

ruling that information has been appropriately withheld from DHS0201-0202, DHS0203-0235,

and DHS0236-0237 on the basis of the work product doctrine. Meanwhile, the motion is

DENIED insofar as it seeks a ruling that information has been appropriately withheld from (a)

DHS0010, DHS0031-0035, DHS0053-0054, DHS0057, DHS0058-0059, DHS0062, DHS0063,

DHS0064, DHS0065-0066, DHS0067-0068, DHS0069, DHS0070-0071, DHS0080-0081,

DHS0082, DHS0085, DHS0093, and DHS0112 on the basis of the attorney-client privilege; (b)

DHS0010, DHS0031-0035, DHS0053-0054, DHS0057, DHS0058-0059, DHS0062, DHS0063,

DHS0064, DH0065-0066, DHS0067-0068, DHS0069, DHS0070-0071, DHS0080-0081,

DHS0082, DHS0085, DHS0093, and DHS0112 on the basis of the work product doctrine; and

(c) DHS0030, DHS0031-0035, DHS0046, DHS0053-0054, DHS0056, DHS0057, DHS0063,

DHS0064, DHS0065-0066, DHS0067-0068, DHS0069, DHS0070-0071, DHS0080-0081,

DHS0082, DHS0085, DHS0093, and DHS0112 on the basis of the deliberative process privilege.

It is **FURTHER ORDERED** that the Court shall afford DHS a *final* opportunity to

discharge its burden of establishing the applicability of the remaining claimed privileges to the

information withheld from Judicial Watch.  The parties shall promptly meet and confer and, by

no later than **February 8, 2012**, file a Joint Status Report proposing a schedule for further

proceedings, which shall include, at a minimum, proposed deadlines for DHS's production of a

revised *Vaughn* Index and agency declaration and for the briefing of a renewed motion for

summary judgment.

**SO ORDERED.**

Date:   January 27, 2012

**COLLEEN KOLLAR-KOTELLY**
United States District Judge