**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

JUDICIAL WATCH, INC.,

        Plaintiff,

    v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,

        Defendant.

Civil Action No. 11-00604 (CKK)

---

**MEMORANDUM OPINION**
(February 28, 2013)

Judicial Watch, Inc. ("Judicial Watch") brings this Freedom of Information Act ("FOIA") action against the United States Department of Homeland Security ("DHS"), seeking the disclosure of records relating to recent changes in federal immigration enforcement priorities and their implementation in Houston, Texas. Presently before the Court are DHS's [18] Renewed Motion for Summary Judgment and Judicial Watch's [20] Cross-Motion for Summary Judgment. Upon careful consideration of the parties' submissions, the relevant authorities, and the record as a whole, the Court shall **GRANT-IN-PART** and **DENY-IN-PART** DHS's Renewed Motion for Summary Judgment and **GRANT-IN-PART** and **DENY-IN-PART** Judicial Watch's Cross-Motion for Summary Judgment.

# I. BACKGROUND[1]

This action has its origins in a national policy issued by United States Immigration and Customs Enforcement ("ICE"), a component and an investigative arm of DHS, and the subsequent response of the Houston ICE Office to that policy.

### A.    Factual Background

On June 3, 2010, John Morton ("Morton"), the Assistant Secretary of ICE located in Washington, D.C., distributed a four-page memorandum to all ICE employees concerning civil immigration enforcement priorities for the apprehension, detention, and removal of aliens (the "June 2010 National Policy Memorandum").  Def.'s First Stmt. ¶ 1.  The June 2010 National Policy Memorandum provides, in part:

> In addition to our important criminal investigative responsibilities, ICE is charged with enforcing the nation's civil immigration laws.  This is a critical mission and

---

[1] The Court made findings of fact in its January 27, 2012 Memorandum Opinion and Order, based upon statements of fact submitted by the parties in connection with DHS's first motion for summary judgment.  *See Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 841 F. Supp. 2d 142 (D.D.C. 2012).  Because both parties have adopted those findings as the factual basis for their motions presently before the Court, the Court shall recount its explanation of the background of this case, to the extent here relevant, as set out in its January 27, 2012 Opinion .  In so doing, it shall cite to the statements of fact submitted by the parties in connection with DHS's first motion for summary judgment.  *See* Def.'s Stmt. of Material Facts as to Which There Is No Genuine Issue ("Def.'s First Stmt."), ECF No. [13-5], and Pl.'s Stmt. of Material Facts as to Which There Is a Genuine Issue and Dispute Filed in Opp'n to Def.'s Mot. for Summ. J., ECF No. [14].  Because the factual record has been expanded since the Court issued its January 27, 2012 Memorandum Opinion and Order, the Court shall also cite to the parties statements of material facts submitted in connection with the instant motions in setting forth the more recent background.  *See* Def.'s Second Statement of Material Facts as to Which There Is No Genuine Issue ("Def.'s Second Stmt."), ECF No. [18-3]; Pl.'s Stmt. of Material Facts as to Which There Is a Genuine Issue and Dispute Filed in Opp'n to Def.'s Mot. for Summ. J. and Pl.'s Stmt. of Material Facts as to Which There is No Genuine Issue Filed in Supp. of its Cross-Mot. for Summ. J. ("Pl.'s Second Stmt."), ECF No. [20]; Def.'s Resp. to Pl.'s Stmt. of Material Facts as to Which There Is No Genuine Issue ("Def.'s Responsive Stmt."), ECF No. [21-1].  Notably, with respect to both its first responsive statement of material facts and its second statement of material facts, Judicial Watch admits the truth of each of the factual allegations proffered by DHS and then proceeds to adduce additional allegations of its own that are either not disputed by DHS or are, in substance, nothing more than legal assertions.

> one with direct significance for our national security, public safety, and the
> integrity of our border and immigration controls.   ICE, however, only has
> resources to remove approximately 400,000 aliens per year, less than 4 percent of
> the estimated illegal alien population in the United States.   In light of the large
> number of administrative violations the agency is charged with addressing and the
> limited enforcement resources the agency has available, ICE must prioritize the
> use of its enforcement personnel, detention space, and removal resources to
> ensure that the removals the agency does conduct promote the agency's highest
> enforcement priorities, namely national security, public safety, and border
> security.

DHS0001.[2]   The memorandum then proceeds to identify three enforcement priorities: (1)

"[a]liens who pose a danger to national security or a risk to public safety," (2) "[r]ecent illegal

entrants," and (3) "[a]liens who are fugitives or otherwise obstruct immigration controls."

DHS0001-0002.  However, the memorandum includes the following proviso: "[n]othing in this

memorandum should be construed to prohibit or discourage the apprehension, detention, or

removal of other aliens unlawfully in the United States," DHS0003—in other words, those aliens

falling outside the three categories of "higher priority" targets.   The memorandum addresses the

role of prosecutorial discretion in balancing enforcement priorities, providing that "[t]he rapidly

increasing number of criminal aliens who may come to ICE's attention heightens the need for

ICE employees to exercise sound judgment and discretion consistent with these priorities when

conducting enforcement operations, making detention decisions, making decisions about release

on supervision . . . , and litigating cases."   DHS0004.

Gary Goldman ("Goldman") is the Chief Counsel of the Office of Chief Counsel within

the Houston ICE Office ("OCC Houston"), one of twenty-six field offices around the country

that litigate cases in immigration court, counsel ICE operational clients, and provide direction

and support to United States Attorneys' Offices.   Def.'s First Stmt. ¶¶ 7, 38.   On August 12,

---

[2]  DHS's partial production of documents to Judicial Watch is stamped DHS0001 through
DHS0237 and is part of the record before the Court.   *See* FOIA Release, ECF No. [13-1].

2010, Goldman issued a four-page memorandum to all attorneys in OCC Houston concerning the exercise of prosecutorial discretion in his office (the "August 12, 2010 Memorandum"). *Id.* ¶ 7. Goldman's memorandum begins by stating that "every attorney must determine whether [a] case may be amenable to the exercise of prosecutorial discretion (PD) pursuant to guidelines outlined in the [June 2010 National Policy Memorandum]." DHS0009. It then proceeds to direct attorneys in OCC Houston to "file a Motion to Dismiss Proceedings . . . in clear [prosecutorial discretion] cases," *id.*, and includes a model to use in such proceedings, DHS0013-0016. The memorandum also describes a process for the review of pending cases in the office, stating that "[t]he goal of this attorney-wide tasking is to improve the overall efficiency of the removal process by ensuring the only cases [OCC Houston] litigate[s] fall within the parameters of the [June 2010 National Policy Memorandum]." DHS0012.

Goldman issued a supplemental two-page memorandum to OCC Houston attorneys on August 16, 2010 (the "August 16, 2010 Memorandum"). Def.'s First Stmt. ¶ 12. Observing that the June 2010 National Policy Memorandum altered the landscape for enforcement priorities, the August 16, 2010 Memorandum identifies the need for "guidance as we strive to ensure consistency in the application of and compliance with prosecutorial discretion policy." DHS0017. After identifying "case-specific questions," the memorandum provides:

> The answer to these questions and many others may be the same. We have been empowered with independent authority to exercise prosecutorial discretion. We work not in a world of black and white but one of many shades of grey. This is the beauty of prosecutorial discretion. We do strive for consistency in application of process but the agency does not want to stifle our independent authority to exercise sound judgment in matters of prosecutorial discretion.

DHS0018. The memorandum counsels that OCC Houston "must be selective in pursuing cases to ensure [its] prosecutions focus on cases of national security, public safety, criminal aliens and the other classes of ICE Priority cases." DHS0017.

On August 20, 2010, Morton issued a second national policy memorandum offering new guidance on how to handle removal proceedings involving aliens with applications or petitions before United States Citizenship and Immigration Services (the "August 2010 National Policy Memorandum"). Def.'s First Stmt. ¶ 15. The memorandum outlines a framework for the expedited disposition of such removal proceedings, including their potential dismissal. DHS0023. It specifies that only removal cases meeting four criteria should be considered for potential dismissal: (1) the alien must be the subject of an application or petition for adjustment of status; (2) the alien must appear eligible for relief as a matter of law and in the exercise of discretion; (3) the alien, if required, must present a completed application to register permanent residence or adjust status; and (4) the alien must be eligible for adjustment of status. DHS0025. Even if an alien meets those criteria, the memorandum provides that "ICE may oppose relief on the basis of discretion." *Id.*

On August 24, 2010, Goldman distributed the August 2010 National Policy Memorandum to his staff in OCC Houston via e-mail. Def.'s First Stmt. ¶ 18. Goldman identified the memorandum as "an agency priority" and simultaneously withdrew his own August 12, 2010 and August 16, 2010 Memoranda. DHS0028. According to the e-mail, "[e]ffective immediately," OCC Houston's "affirmative efforts regarding prosecutorial discretion [were] to focus on the class of cases outlined in the [August 2010 National Policy Memorandum]." *Id.*

On August 25, 2010, Riah Ramlogan, the Director of Field Legal Operations in ICE's Office of the Principal Legal Advisor ("OPLA")[3] sent a memorandum to Goldman addressing

---

[3] OPLA provides legal advice, training, and services to support ICE's mission and defends the federal government's interests in administrative and federal courts. Def.'s Stmt. ¶ 37.

his interpretation of the June 2010 National Policy Memorandum, as reflected in his August 12, 2010 and August 16, 2010 Memoranda.  Def.'s First Stmt. ¶ 21.  The memorandum provides:

> I understand that your office has implemented the memoranda you issued by terminating each case it identified that did not correspond to one or more of the three priorities identified in [the June 2010 National Policy Memorandum]. However, your implementation overlooks a key provision of that guidance, which makes clear that . . . ICE shall continue enforcing the law against other aliens as well.  * * *  Your approach that our attorneys should only litigate cases within the agency's highest priorities is not an accurate interpretation of the Assistant Secretary's guidance and is not consistent with agency policy.

DHS0029.   Goldman   was   asked   to   rescind   his   August   12,   2010   and   August   16,   2010 Memoranda.  *Id.*

Goldman later responded by informing OPLA that he had already rescinded his August 12, 2010 and August 16, 2010 Memoranda, DHS0030, and explained that his "goal . . . was to improve the efficiencies of the removal process by utilizing [OCC Houston's] resources to ensure that the removals the agency does conduct promote the agency's highest enforcement priorities, namely national security, public safety, and border security," DHS0032.

> B.    *Procedural Background*

Judicial Watch submitted a FOIA request to DHS on August 30, 2010, seeking an array of records concerning the review and potential dismissal of pending immigration cases in Houston, Texas.  Def.'s First Stmt. ¶ 25; Pl.'s Second Stmt. ¶1.  DHS acknowledged receipt of the request and subsequently conducted a thorough search for responsive records.  *Id.* ¶¶ 26-36, 39-46.

Judicial Watch commenced this action on March 23, 2011.  *See* Compl., ECF No. [1]. On May 27, 2011, DHS released 237 pages of spreadsheets, memoranda, and correspondence to Judicial Watch, releasing 46 pages in full and releasing 191 pages in part.  Def.'s First Stmt. ¶¶

48, 50-51.   As a basis for its partial withholding decisions, DHS cited FOIA Exemptions 5, 6, and 7(C).   *Id.* ¶ 51.   DHS did not withhold any records in full.   *Id.* ¶ 49; Def.'s Second Stmt. ¶ 5.

DHS filed its first motion for summary judgment on August 4, 2011, *see* Def.'s Mem. of P. & A. in Supp. of Def.'s Mot. for Summ. J. ECF No. [13], which was accompanied by an itemized index correlating each document with a specific exemption and the justification for non-disclosure, *see* Def.'s *Vaughn*[4] Index ("First *Vaughn* Index"), ECF No. [13-4], as well as a declaration from the Deputy FOIA Officer in ICE's FOIA Office, Ryan Law ("First Agency Declaration"), ECF No. [13-2].   Judicial Watch opposed DHS's first motion for summary judgment, *see* Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J., ECF No. [14], but elected not to cross-move for summary judgment.

On January 27, 2012, the Court granted-in-part and denied-in-part DHS's first motion for summary judgment.   Specifically, the Court granted summary judgment as to three spreadsheets, bearing stamps DHS0201-0202, DHS0203-0235, and DHS0236-0237, holding that those documents had been permissibly redacted as work-product pursuant to 5 U.S.C. § 552(b)(5), which permits an agency to withhold from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." *See Judicial Watch, Inc. v. U.S. Dept. of Homeland Sec.*, 841 F. Supp. 2d 142, 156-159 (D.D.C. 2012).   The Court denied summary judgment as to the remainder of the documents in dispute, finding that the descriptions provided in DHS's First *Vaughn* Index and First Agency Declaration were too brief and generalized, such that the Court was left without an adequate basis for determining whether 5 U.S.C. § 552(b)(5) was properly invoked with respect to those documents.

---

[4]  The reference is to the United States Court of Appeals for the District of Columbia's decision in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974).

By way of example, the Court observed that in identifying its justification for withholding information pursuant to the attorney-client privilege (which, as explained more fully below, is incorporated by 5 U.S.C. § 552(b)(5)), DHS's First *Vaughn* Index simply parroted selected elements of the attorney-client privilege.   Almost without exception, DHS asserted, without further elaboration, that "the attorney-client privilege appl[ies] because this document was created by agency attorneys . . . to provide legal analysis and advice."   Similarly, DHS's agency declarant merely broadly asserted that "communications between an [*sic*] ICE attorneys and ICE employees" have been withheld and that "[t]he communications consisted of an attorney or employee providing information for the purpose of seeking legal advice and counsel rendering advice."   First Agency Decl. ¶ 34.   The Court concluded that, even when situating these descriptions within the context of DHS's partial production, the descriptions of the documents were "so brief and of such a general nature that they fail[ed] to give the [C]ourt any basis for determining whether the [attorney-client] privilege was properly invoked."   *Judicial Watch*, 841 F. Supp. 2d at 154-55 (citing *Alexander v. Fed. Bureau of Investigation*, 192 F.R.D. 42, 45 (D.D.C. 2000)).   The Court similarly found that, with the exception of the three aforementioned spreadsheets, DHS's descriptions of all other information withheld pursuant to both the attorney work-product doctrine and deliberative process privilege (both also incorporated by 5 U.S.C. § 552(b)(5)) were so generalized that the Court could not conclude whether the challenged documents were lawfully redacted pursuant to either of those privileges.   *Id*. at 156-163.

Because of the foregoing deficiencies, the Court denied DHS's motion for summary judgment insofar as it sought a ruling that information had properly been withheld from the following documents:

(a) DHS0010,  DHS0031-0035,  DHS0053-0054,  DHS0057,  DHS0058-0059,  DHS0062, DHS0063,  DHS0064,  DHS0065-0066,  DHS0067-0068,  DHS0069,  DHS0070-0071,

DHS0080-0081, DHS0082, DHS0085, DHS0093, and DHS0112 (insofar as DHS redacted information contained within these documents on the basis of the attorney-client privilege)

(b)   DHS0010, DHS0031-0035, DHS0053-0054, DHS0057, DHS0058-0059, DHS0062, DHS0063, DHS0064, DH0065-0066, DHS0067-0068, DHS0069, DHS0070-0071, DHS0080-0081, DHS0082, DHS0085, DHS0093, and DHS0112 (insofar as DHS redacted information contained within these documents on the basis of the work-product doctrine); and

(c)   DHS0030, DHS0031-0035, DHS0046, DHS0053-0054, DHS0056, DHS0057, DHS0063, DHS0064, DHS0065-0066, DHS0067-0068, DHS0069, DHS0070-0071, DHS0080-0081, DHS0082, DHS0085, DHS0093, and DHS0112 (insofar as DHS redacted information contained within these documents on the basis of the deliberative process privilege).

*Id.* at 163-164.  In an exercise of its discretion, the Court permitted DHS a "final opportunity" to establish the applicability of U.S.C. § 552(b)(5) to the above-listed documents.  *Id.* at 164.

In accordance with the Court's January 27, 2012 Order, DHS filed a renewed motion for summary judgment on March 9, 2012, *see* Def.'s Mem. of P. & A. in Supp. of Def.'s Renewed Mot. for Summ. J. ("Def.'s Mem."), ECF No. [18], to which DHS attached as exhibits a revised *Vaughn* Index ("Second *Vaughn* Index"), ECF No. [18-1], and a second declaration from Deputy FOIA Officer, Ryan Law ("Second Agency Declaration"), ECF No. [18-2].  On March 30, 2012, Judicial Watch filed its combined opposition to DHS's renewed motion for summary judgment and cross-motion for summary judgment.  *See* Pl.'s Mem. of Law in Opp'n to Def.'s Renewed Mot. for Summ. J. and in Supp. of Pl.'s Cross-Mot. for Summ. J. ("Pl.'s Mem."), ECF Nos. [19]/[20].  DHS filed its combined opposition to Judicial Watch's cross-motion for summary judgment and reply in support of its renewed motion for summary judgment on April 20, 2012. *See* Def.'s Reply Mem. of P. & A. in Supp. of Def.'s Renewed Mot. for Summ. J. and Mem. of P. & A. in Opp'n to Pl.'s Cross-Mot. for Summ. J. ("Def.'s Reply"), ECF Nos. [21]/[22]. Judicial Watch filed its reply in further support of its cross-motion for summary judgment on

May 9, 2012.  *See* Pl.'s Reply to Def.'s Mem. of P. & A. in Opp'n to Pl.'s Cross-Mot. for Summ.

J. ("Pl.'s Reply"), ECF No. [23].   Accordingly, the motion is fully briefed and ripe for

adjudication.  In an exercise of its discretion, the Court finds that holding oral argument would

not be of assistance in rendering a decision.  *See* LCvR 7(f).

## II.  LEGAL STANDARD[5]

Congress enacted FOIA to "pierce the veil of administrative secrecy and to open agency

action to the light of public scrutiny."  *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)

(quotation marks omitted).   However, Congress remained sensitive to the need to achieve

balance between these objectives and the potential that "legitimate governmental and private

interests could be harmed by release of certain types of information."  *Critical Mass Energy*

*Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (en banc) (quotation

marks omitted), *cert. denied*, 507 U.S. 984 (1993).  To this end, FOIA "requires federal agencies

to make Government records available to the public, subject to nine exemptions for categories of

material."  *Milner v. Dep't of Navy*, __ U.S. __, 131 S. Ct. 1259, 1261-62 (2011).  Despite the

availability of such exemptions, "disclosure, not secrecy, is the dominant objective of the act."

*Rose*, 425 U.S. at 361.  For this reason, the "exemptions are explicitly made exclusive, and must

be narrowly construed."  *Milner*, 131 S. Ct. at 1262 (quotation marks and citation omitted).

Summary judgment is proper when the pleadings, the discovery materials on file, and any

affidavits or declarations "show[] that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  When presented with a

motion for summary judgment in this context, the district court must conduct a "de novo" review

---

[5] The legal standards governing the Court's consideration of motions for summary judgment in
this context were described in this Court's January 27, 2012 Memorandum Opinion and Order
and shall be repeated, to the extent relevant to the instant motions, throughout this Memorandum
Opinion.

of the record, 5 U.S.C. § 552(a)(4)(B), which "requires the court to ascertain whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempt from disclosure," *Assassination Archives & Research Ctr. v. Cent. Intelligence Agency*, 334 F.3d 55, 57 (D.C. Cir. 2003) (quotation marks omitted).   "Consistent with the purpose of the Act, the burden is on the agency to justify withholding requested documents," *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993), and only after an agency has proven that "it has fully discharged its disclosure obligations" is summary judgment appropriate, *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983).   In ascertaining whether the agency has met its burden, the district court may rely upon agency affidavits or declarations.  *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).   "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone."  *Am. Civil Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011).

## III.  DISCUSSION

As the Court observed in its previous Memorandum Opinion, the dispute before the Court is narrow.  Judicial Watch challenges only DHS's reliance upon FOIA Exemption 5 as a basis for withholding information from memoranda and correspondence responsive to its request for records.[6]  Exemption 5 protects "inter-agency or intra-agency memorandums or letters which

---

[6]  As the parties made clear in their briefing in connection with DHS's first motion for summary judgment, Judicial Watch does not contest the adequacy of DHS's search for records or the agency's reliance upon Exemptions 6 and 7(C) as a basis for non-disclosure.  *See* Def.'s Mem. of P. & A. in Supp. of Def.'s Mot. for Summ. J. ECF No. [13], at 7; Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J., ECF No. [14], at 6 n.2.

would not be available by law to a party other than an agency in litigation with the agency." 5

U.S.C. § 552(b)(5).  Over the years, it has been construed as protecting "those documents, and

only those documents, normally privileged in the civil discovery context." *Nat'l Labor Relations*

*Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).  It provides protection to "materials

which would be protected under the attorney-client privilege, the attorney work-product

privilege, or the executive 'deliberative process' privilege." *Coastal States Gas Corp. v. Dep't of*

*Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980) (citations omitted).

Under the federal common law, the proponent bears the burden of demonstrating the

applicability of any asserted privilege. *In re Subpoena Duces Tecum Issued to Commodity*

*Futures Trading Comm'n*, 439 F.3d 740, 750 (D.C. Cir. 2006).  To meet that burden, the

proponent must establish the claimed privilege with "reasonable certainty." *Fed. Trade Comm'n*

*v. TRW, Inc.*, 628 F.2d 207, 213 (D.C. Cir. 1980).  Specifically, the proponent must adduce

competent evidence in support of "each of the essential elements necessary to support a claim of

privilege." *Alexander*, 192 F.R.D. at 45.  The proponent "must offer more than just conclusory

statements, generalized assertions, and unsworn averments of its counsel." *In re Application of*

*Veiga*, 746 F. Supp. 2d 27, 34 (D.D.C. 2010).  Where the proponent fails to adduce sufficient

facts to permit the district court to conclude with reasonable certainty that the privilege applies,

its burden has not been met. *TRW*, 628 F.2d at 213.

In this case, Judicial Watch challenges DHS's reliance on three recognized privileges: (1)

the "deliberative process" privilege; (2) the attorney-client privilege; and (3) the work-product

doctrine.  The Court shall address each privilege below.

A. *The Deliberative Process Privilege*

The deliberative process privilege protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (quotation marks omitted).  It recognizes "that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them." *Id.* at 8-9 (quotation marks and citations omitted).  The privilege is designed to "protect the executive's deliberative processes—not to protect specific materials." *Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987).  To qualify for protection under the privilege, materials must be "both 'predecisional' and 'deliberative.'" *Pub. Citizen, Inc. v. Office of Mgmt. and Budget*, 598 F.3d 865, 874 (D.C. Cir. 2010) (quoting *Coastal States*, 617 F.2d at 866).  A document is predecisional "if it was generated before the adoption of an agency policy and deliberative if it reflects the give-and-take of the consultative process." *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 151 (D.C. Cir. 2006) (quotation marks omitted).  To be deliberative, information "must reflect the personal opinions of the writer rather than the policy of the agency." *Morley v. Cent. Intelligence Agency*, 508 F.3d 1108, 1127 (D.C. Cir. 2007) (quotation marks omitted).

Judicial Watch challenges DHS's invocation of the deliberative process privilege with respect to a total of seventeen documents – specifically, DHS0030, DHS0031-0035, DHS0046, DHS0053-0054, DHS0056, DHS0057, DHS0063, DHS0064, DHS0065-0066, DHS0067-0068,

DHS0069, DHS0070-0071, DHS0080-0081, DHS0082, DHS0085, DHS0093, and DHS0112. Pl.'s Mem. at 8.[7]

In its opposition to DHS's first motion for summary judgment, which challenged the same set of documents listed above, Judicial Watch tendered a series of arguments as to why DHS's reliance on the deliberative process privilege was improper.  In its January 27, 2012 Memorandum Opinion, the Court stated its agreement with two of these arguments.  First, the Court agreed that DHS's First *Vaughn* Index and First Agency Declaration failed to provide sufficient factual context for much of the information withheld under the deliberative process privilege to allow the Court to conclude that the privilege had been properly invoked.  *See Judicial Watch*, 841 F. Supp. 2d at 161-63.  Specifically, the Court found that DHS merely recited legal boilerplate about the elements of the deliberative process privilege without explaining how the privilege applied to the documents in question.  *Id.*  Second, the Court stated that it shared Judicial Watch's concern as to whether DHS had disclosed all reasonably segregable, non-exempt factual information from the documents.  *Id.*  For both of these reasons, the Court declined to rule on the merits of DHS's decision to withhold certain information under the deliberative process and instead afforded DHS a further and final opportunity to establish the applicability of the deliberative process privilege, as well as that all reasonably segregable information has been released to Judicial Watch.  *Id.*

---

[7] Based on the Court's reading of the agency declarations and Second *Vaughn* Index (which in almost every instance in which the deliberative process is asserted describes the deliberative process privilege as applicable to "the" redacted text or information withheld from the relevant document), the Court understands DHS to have asserted the deliberative process privilege with respect to all of the withheld information contained within each of these seventeen documents, with the exception of DHS0031-0035 and DHS0053-54, for which the Second *Vaughn* Index indicates the applicability of the deliberative process to only a portion of the various redacted sections of those two documents.

Upon review of DHS's Second *Vaughn* Index, which describes the content of the withheld information with significantly greater specificity than its First *Vaughn* Index, the Court finds that DHS has made an evidentiary showing sufficient to sustain its reliance on the deliberative process privilege with respect to each of the challenged documents – all of which appear to the Court to contain discussions reflecting the "give-and-take" of the consultative process occurring within the agency in connection with the adoption of final guidance regarding which removal cases satisfy the criteria for potential dismissal.  Indeed, Judicial Watch expressly concedes the applicability of the deliberative process privilege to the non-factual deliberations contained within the documents.  *See* Pl.'s Mem. at 9-10; Pl.'s Reply at 3.  Rather, Judicial Watch's sole remaining argument regarding DHS's deliberative process withholdings is that DHS has not sufficiently segregated and released factual material from those deliberative discussions.  *See* Pl.'s Mem. at 8-10; Pl.'s Reply at 3.

"FOIA §552(b) requires that even if some materials from the requested record are exempt from disclosure, any 'reasonably segregable' information from those documents must be disclosed after redaction of the exempt information unless the exempt portions are 'inextricably intertwined with exempt portions.'" *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (citations omitted).  *See also Vaughn v. Rosen*, 484 F.2d 820, 825 (D.C. Cir. 1973) (stating that "an entire document is not exempt merely because an isolated portion need not be disclosed" and that an "agency may not sweep a document under a general allegation of exemption, even if that general allegation is correct with regard to part of the information").

In this Circuit, regardless of whether a party raises a specific challenge to an agency's determination on the segregability of requested records, a district court may not "simply approv[e] the withholding of an entire document without entering a finding on segregability, or

the lack thereof." *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996)

(citation omitted).   Accordingly, the Court must make a "specific" finding as to segregability,

*Sussman v. U.S. Marshals Service*, 494 F.3d 1106, 1116 (D.C. Cir. 2007), and FOIA places the

burden on the agency to demonstrate that no reasonably segregable material exists in the

withheld documents or portions of documents.   *Army Times Publ'g Co. v. Dep't of Air Force*,

998 F.2d 1067, 1068 (D.C. Cir. 1993).   The agency must "provide [ ] a 'detailed justification'

and not just 'conclusory statements' to demonstrate that all reasonably segregable material has

been released." *Valfells v. CIA*, 717 F. Supp. 2d 110, 120 (D.D.C. 2010). "However, the agency

is not required to provide so much detail that the exempt material would be effectively

disclosed." *Id*.   The agency may meet its obligation to provide a "detailed justification" via

"[t]he combination of the *Vaughn* index and [agency] affidavits." *Johnson*, 310 F.3d at 776.

Here, it bears mention that although several of the documents are heavily redacted, DHS

has not withheld from Judicial Watch any document in their entirety.   Further, in DHS's First

Agency Declaration, which is incorporated by reference in its Second Agency Declaration, the

Deputy FOIA Officer in ICE's FOIA Office asserts that he "reviewed each record line-by-line to

identify information exempt from disclosure" and that "[w]ith respect to the records that were

released in part, all information not exempted from disclosure pursuant to FOIA exemptions …

was correctly segregated and non-exempt portions were released."   First Agency Decl. ¶¶ 45-46;

Second Agency Decl. ¶ 6.   While this "blanket declaration" alone is insufficient to support a

finding that all reasonably segregable material in the challenged documents has been produced,

*see Wilderness Soc. v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 19 (D.D.C. 2004), the Court

finds that when read in conjunction with the Second *Vaughn* Index – which provides appreciably

more detailed descriptions of the withheld portions of each document (as well as of the FOIA

exemption(s) justifying their non-production), DHS has shown, with ample specificity, that it has released all reasonably segregable material from all documents responsive to Judicial Watch's request. *See Johnson*, 310 F.3d at 776.

By way of example, in its January 27, 2012 Opinion, the Court expressed particular concern with DHS's invocation of the deliberative process privilege with respect to the document stamped DHS0046. The Court observed:

> DHS0046 is a one-page e-mail from Goldman to one of his superiors in OPLA. The e-mail's subject line reads, "Discussion," the first line states, "I know how busy you must be so I thought I would simply write you a very brief email to clarify one issue," and the final line provides, "Thanks for supporting the field." In its *Vaughn* Index, DHS merely recites legal boilerplate about the deliberative process privilege[.]"

*Judicial Watch*, 841 F. Supp. 2d at 162. Indeed, DHS's First *Vaughn* Index did no more than recount the legal standard governing application of the deliberative process privilege generally, along with a non-descript assertion that "[i]n this case, the contents of the e-mail are largely subjective in that they reflect the personally held opinions of the employees as to whether or not the implementation of a policy was appropriate." First *Vaughn* Index at 4. Because this description left the Court with nothing more than a naked invocation of the deliberative process privilege, the Court concluded that it could not determine whether DHS's reliance on the privilege with respect to the document was lawful, and even if it was, whether DHS had complied with its duty to release all reasonably segregable information. *Judicial Watch*, 841 F. Supp. 2d at 161-63.

Upon review of the submissions accompanying DHS's renewed motion for summary judgment, the Court finds that DHS has adequately cured these deficiencies. DHS's Second *Vaughn* Index explains, in relevant part, that the information that it withheld from the document on the basis of the deliberative process privilege contains a discussion about the procedures for

filing motions to dismiss proceedings in several Chief Counsel offices, including one employee's personal opinions as to whether or not the implementation of a certain procedure was appropriate.  Second *Vaughn* Index at DHS0046.  As previously noted, Judicial Watch no longer contests the general applicability of the deliberative process privilege to this discussion, but rather, argues only that DHS has failed to explain why DHS0046 has been redacted almost in its entirety.  *See* Pl.'s Mem. at 9.  More specifically, Judicial Watch argues that the procedures discussed are in themselves primarily "factual" matters requiring disclosure under the segregability standard.  *See id.*; Pl.'s Reply at 3.

The factual nature of this information is not, however, alone sufficient to preclude application of the deliberative process exemption.  It is true that "the deliberative character of agency documents can often be determined through 'the simple test that factual material must be disclosed but advice and recommendations may be withheld.'"  *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993) (citing *Wolfe v. Dep't of Health & Human Services*, 839 F.2d 768, 774 (D.C. Cir. 1988)).  But as our Court of Appeals has made clear, "the fact/opinion test, while offering 'a quick, clear, and predictable rule of decision,' is not infallible and must not be applied mechanically."  *Id.*  "This is so because the privilege serves to protect the deliberative process itself, not merely documents containing deliberative material."  *Id.*  Accordingly, this Circuit has upheld the withholding of factual material under the deliberative process privilege when such "factual material was assembled through an exercise of judgment in extracting pertinent material from a vast number of documents for the benefit of an official called upon to take discretionary action."  *Id.* at 1539.  *See also In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1998) (factual material is entitled to deliberative process protection where the material is "so

inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations.")

Regarding DHS0046, while the procedures used in certain Chief Counsel offices are undoubtedly "facts," the document and the Second *Vaughn* Index read together make clear that the author of the email, Goldman, was propounding information about select procedures for filing motions to dismiss proceedings in several Chief Counsel offices to a superior – the then Acting Director of Field Legal Operations – in the context of a deliberation as to whether or not a procedure should be implemented. *See* Second *Vaughn* Index at DHS0046; Def.'s Mem. at 6; Def.'s Reply at 4. *See also Schlefer v. United States*, 702 F.2d 233, 238 (D.C. Cir. 1983) ("Intra-agency memoranda from 'subordinate' to 'superior' on an agency ladder are likely to be more 'deliberative' in character than documents emanating from superior to subordinate.") (citations omitted). This given, the Court finds that the information withheld from DHS0046 appears itself to be reflective of the deliberative process.

Upon review of the Second *Vaughn* Index and DHS's document production, the Court concludes that the same rationale applies to several other communications specifically and diligently identified by DHS which are factual in nature but nevertheless indicative of – and thus inseparable from – the deliberations contained within the documents. *See, e.g.*, Second *Vaughn* Index at DHS0005-0006 (describing the factual material discussed by an OPLA attorney as relevant to the feasibility of a policy being discussed); *id.* at DHS0056 (describing the withheld portions of the document, an e-mail communication from Goldman to OPLA leadership, as containing "personal" recollections" and "opinions" of circumstances leading to the exercise of prosecutorial discretion and specific actions taken by OPLA leadership). Judicial Watch broadly asserts that "much of the redacted information" withheld on the basis of the deliberative process

privilege "appears to consist of merely factual information," Pl.'s Mem. at 9; however, with the exception of the above-discussed targeted challenge to DHS0046, it neglects entirely to provide any explanation or support for this contention, and the Court perceives none.[8]

For all of the foregoing reasons, and upon consideration of the Second *Vaughn* Index and the agency declarations, the Court finds that DHS has satisfied its obligation to demonstrate that it has properly identified and released all segregable portions of the seventeen documents redacted pursuant to the deliberative process privilege and challenged by Judicial Watch, as well as all other documents it found to be responsive to Judicial Watch's FOIA request.

### B.  The Work-Product Doctrine

The work-product doctrine protects materials "prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  FED. R. CIV. P. 26(b)(3)(A).  The purpose of the work-product privilege is to ensure that "a lawyer [can] work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel," and to permit attorneys to "assemble information, sift what [they] consider[ ] to be the relevant from the irrelevant facts, prepare [their] legal theories and plan [their] strateg[ies] without undue and needless interference." *Hickman v. Taylor*, 329 U.S. 495, 510-11, 67 S. Ct. 385, 91 L. Ed. 451 (1947).

---

[8] To be sure, Judicial Watch also specifically disputes DHS's redaction of the "data" from the first page of a two page document, stamped DHS0053-54, *see* Pl.'s Mem. at 9-10; Pl.'s Reply at 3, and DHS argues in its briefing that this information is entitled to deliberative process protection, work-product protection, and attorney-client protection, Def.'s Mem. at 5-6, 11; Def.'s Reply at 4.  However, the Second *Vaughn* Index indicates that while DHS has invoked the deliberative process privilege with respect to an agency employee's statements of personal opinion regarding proposed changes to ICE policy on DHS0054, DHS has in fact relied exclusively on the attorney work-product privilege to specifically support the relevant redaction on DHS0053 – not the deliberative process privilege. Accordingly, in deference to the representations in DHS's Second *Vaughn* Index (and not crediting the unsworn statements of counsel contained within DHS's briefing), the Court shall decline to consider the applicability of the deliberative process privilege to the redactions on DHS0053 but shall instead discuss the propriety of these redactions on the basis of the attorney work-product and attorney-client privileges.

In assessing whether the proponent has carried its burden, the relevant inquiry is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Equal Emp't Opportunity Comm'n v. Lutheran Soc. Servs.*, 186 F.3d 959, 968 (D.C. Cir. 1999) (quotation marks omitted). This inquiry encompasses two related but distinct concepts – one a question of timing and the other a question of intent. *U.S. ex rel. Fago v. M & T Mortg. Corp.*, 242 F.R.D. 16, 18 (D.D.C. 2007). The former, the temporal element, asks whether there was "a subjective belief that litigation was a real possibility" at the time the document was prepared and whether that belief was "objectively reasonable." *Lutheran Soc. Servs.*, 186 F.3d at 968 (quotation marks omitted). The latter, the motivational element, demands that the document be prepared or obtained *because of* the prospect of litigation. *Id.* In this respect, the proponent bears the burden of "showing that the documents were prepared for the purpose of assisting an attorney in preparing for litigation, and not some other reason." *Alexander*, 192 F.R.D. at 46. "[T]he documents must at least have been prepared with a specific claim supported by concrete facts which would likely lead to litigation in mind." *Coastal States*, 617 F.2d at 865. Further, in this Circuit, "[i]f a document is fully protected as work product, then segregability is not required." *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 371 (D.C. Cir. 2005).[9]

Here, Judicial Watch contests DHS's reliance on the attorney work-product doctrine as a basis for withholding information from a total of fifteen documents—specifically, DHS0010, DHS0031-0035, DHS0053-0054, DHS0058-0059, DHS0062, DHS0063, DHS0064, DH0065-

---

[9] In the civil discovery context, the work-product privilege is qualified and may be overcome by a showing of "substantial need." FED. R. CIV. P. 26(b)(3)(A)(ii). However, that limitation does not apply under FOIA. *Williams & Connolly v. Secs. & Exch. Comm'n*, 662 F.3d 1240, 1243 (D.C. Cir. 2011).

0066, DHS0067-0068, DHS0069, DHS0080-0081, DHS0082, DHS0085, DHS0093, DHS0112.
*See* Pl.'s Opp'n at 6-8. Preliminarily, based on the Court's reading of the Second Vaughn Index, there appears to exist substantial overlap between the information redacted from these documents on the basis of the deliberative process privilege and that redacted pursuant to the work-product privilege. Specifically, DHS appears to have asserted the deliberative process privilege as an alternative basis for withholding the same portions allegedly protected by the work-product doctrine in the following documents: DHS0063, DHS0064, DH0065-0066, DHS0067-0068, DHS0069, DHS0080-0081, DHS0082, DHS0085, DHS0093, and DHS0112.

Because the Court has already found, for reasons stated *supra* Part III.A., that DHS has permissibly invoked the deliberative process privilege with respect to the information withheld from these documents, the Court need not, and in the interest of judicial economy, shall not address the propriety of DHS's assertion of the work-product privilege with respect to those same documents. This given, all that remains for the Court's consideration with respect to the work-product doctrine are the following five documents: DSH0010; DHS0031-0035; DHS0053-0054; DHS0058-0059; and DHS0062.

In its January 27, 2012 Memorandum Opinion, the Court divided its analysis of DHS's reliance on the work-product doctrine into two sections. First, the Court addressed Judicial Watch's challenge to three spreadsheets relating to immigration cases handled by OCC Houston—specifically, DHS0201-0202, DHS0203-0235, and DHS0236-0237. *See Judicial Watch*, 841 F. Supp. 2d at 156-159. The Court described these spreadsheets as follows:

> The information in these spreadsheets was compiled as part of OCC Houston's efforts to conform to the June 2010 and August 2010 National Policy Memoranda, and in particular the office's efforts to determine which pending and reasonably foreseeable immigration cases, if any, were candidates for

potential dismissal consistent with the exercise of prosecutorial discretion.[10]
The information withheld appears in columns labeled "Basis(es) for Seeking
Dismissal," DHS201-0202, "Reason for filing Motion," DHS0203-0235, "Type
of Review," DHS0203-0235, "Basis of Motion," DHS0236-0237, and "Brief
Explanation (and Other Notes)," DHS0236-0237.   In its submissions, DHS
specifically represents that the information in these columns was "derived
entirely from attorney notes" that were made in preparation for litigation.

*Id.* at 156-157 (citing First Agency Decl. ¶36; First *Vaughn* Index at 17-18).

In its opposition to DHS's first summary judgment motion, Judicial Watch argued, *inter alia*, that because the information in the spreadsheets was gathered to decide whether to terminate litigation, the information could not have been prepared "in anticipation in litigation" as is required under the work-product doctrine.  The Court found this argument without merit, reasoning that "[m]aterial may still be said to be prepared 'in anticipation of litigation' even when an attorney is deciding whether or not to pursue a case, including under circumstances analogous to those presented here."   *Id.* at 157 (citing *Michael's Piano, Inc. v. Fed. Trade Comm'n*, 18 F.3d 138, 145 (2d Cir. 1994) (concluding that the work-product doctrine still applied to documents prepared after government counsel "decided not to recommend enforcement litigation"), *cert. denied*, 413 U.S. 1015 (1994); *Kishore v. U.S. Dep't of Justice*, 575 F. Supp. 2d 243, 259-60 (D.D.C. 2008) (concluding that the work-product doctrine applied to records explaining the government's reasons for declining to prosecute); *Heggestad v. U.S.*

---

[10] While it is ultimately immaterial to the instant motion, the three spreadsheets differ slightly in their precise content.  The first spreadsheet sets forth information identifying the location of the proceeding and the alien involved, all of which has been disclosed, while a final column, which has been redacted, appears to identify the alien's past criminal convictions.  DHS0201-0202. The second spreadsheet sets forth information identifying the proceeding, the alien and counsel involved, the relief sought by the alien, the status of OCC Houston's motion to dismiss, and the alien's response to the motion, all of which has been disclosed, while two columns identifying the reason for the filing of the motion and the type of review conducted have been withheld from disclosure.  DHS0203-0235.  The third spreadsheet, titled "Motions to Terminate Filed by OCC (Fiscal Year 2011)," identifies the proceeding, the alien and office involved, and the status of OCC Houston's motion to dismiss, all of which has been disclosed, while two columns identifying the basis of the motion and a brief explanation have been redacted.  DHS0236-0237.

*Dep't of Justice*, 182 F. Supp. 2d 1, 10 (D.D.C. 2000) (rejecting argument that documents recommending the declination of prosecution are not subject to the work-product doctrine); and *Cities Serv. Co. v. Fed. Trade Comm'n*, 627 F. Supp. 827, 832 (D.D.C. 1984) (finding that materials relating to potential settlement are eligible for work-product protection), *aff'd*, 778 F.2d 889 (D.C. Cir. 1985)).

Because the Court found that DHS had satisfied it burden of showing that the information was prepared in anticipation of the pending and reasonably foreseeable immigration cases handled by OCC Houston, the Court granted DHS's motion for summary judgment insofar as it sought a ruling that information had been appropriately withheld from DHS0201-0202, DHS0203-0235, and DHS0236-0237 on the basis of the work-product doctrine.

However, the Court denied DHS's motion with respect to the second set of documents – which included those five documents presently at issue: DSH0010, DHS0031-0035, DHS0053, DHS0058-0059, and DHS0062. The Court held that DHS's evidentiary showing with respect to each of these documents was so "generalized and non-specific" that it failed to satisfy the Court that the work-product doctrine had been properly invoked as a basis for non-disclosure. *Id.* at 159-160. Specifically, the Court found that the First *Vaughn* Index did no more than parrot the elements of the work-product doctrine asserting, almost without exception and unaccompanied by factual content, that the "work-product privilege … applie[s] because this document was created by agency attorneys in anticipation of potential litigation, to provide legal analysis and advice." *Id*. at 159. For this reason, the Court denied DHS's first motion for summary judgment insofar as it sought a ruling that information had been appropriately withheld from the produced documents on the basis of the work-product doctrine. The Court further exercised its discretion to afford DHS an additional and final opportunity to establish the applicability of the work-

product doctrine to the withheld information.  In so doing, the Court cautioned DHS that it must show, at a minimum, that "'the documents must at least have been prepared with a specific claim supported by concrete facts which would likely lead to litigation in mind.'" *Id.* at 160 (citing *Coastal States*, 617 F.2d at 865).

Judicial Watch contends that notwithstanding this clear guidance from the Court, DHS has once again failed to show that the information withheld pursuant to the work-product doctrine was prepared in anticipation of specific litigation.  *See* Pl.'s Mem. at 6-7.  Specifically, Judicial Watch argues that DHS "links" the documents to broad "*categories* of cases that might lead eventually to litigation" but "never links any of the documents at issue to any *specific* case." *Id.* (emphasis in original).  DHS acknowledges that, in many instances, the withheld information was not prepared exclusively for one or more particular immigration cases, but rather argues that the information "explain[s] what attorneys should do" when confronted with "distinct classes of cases ICE attorneys were contemplating."  *See* Def.'s Mem. at 15-16.  DHS explains that "[S]pecific cases being contemplated included priority one, two and three cases; cases that did not fall into those three categories; juvenile cases; driving while intoxicated cases; and asylum cases."  Def.'s Reply at 7 (citations omitted).  DHS relies upon the D.C. Circuit's holding in *Schiller v. National Labor Relations Board* – a case where the Circuit upheld the National Labor Relations Board's assertion of the work-product doctrine to protect from disclosure an internal agency memorandum that "contain[ed] tips for handling unfair labor practice cases that could affect subsequent EAJA [Equal Access to Justice Act] litigation," provided "advice on how to build an EAJA defense and how to litigate EAJA cases," and offered "instructions on preparing and filing pleadings in EAJA cases, including arguments and authorities."  964 F.2d 1205, 1208 (D.C. Cir. 1992), *abrogated on other grounds by Milner v. Dep't of Navy*, 131 S. Ct. 1259

(2011).   DHS contends that the documents in the instant case, like those in *Schiller*, "were prepared because of the prospect of litigating particular classes of cases."  Def.'s Reply at 7.  *See also* Def.'s Mem. at 16-17 ("Similar reasoning should apply here, where attorneys are given guidance on how to handle specific classes of cases they are likely to confront.").

DHS's reliance on *Schiller* is misplaced.  Although it is true that *Schiller* rejected the argument that the work-product doctrine requires that the documents be created in anticipation of litigation over a "specific claim," the Court in *Schiller* dealt with a very different situation than that presently before the Court.  Indeed, the D.C. Circuit has since observed that the government lawyers in *Schiller* "acted not as prosecutors or investigators of suspected wrongdoers, but as legal advisors protecting their agency clients from the possibility of future litigation." *In re Sealed Case*, 146 F.3d 881,885 (D.C. Cir. 1998).  The Court in *In re Sealed Case* distinguished *Schiller* from *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980), a case involving documents that "had been prepared by government lawyers in connection with active investigations of potential wrongdoing" in which the Circuit held that the work-product doctrine does require a "specific claim." *Id.*  The Court explained that "[t]he documents in *Coastal States* were legal advice memoranda prepared by government lawyers in response to specific requests from agency auditors examining oil company compliance with certain regulations.   We employed a specific claim requirement to distinguish memoranda that could be protected by the work-product privilege because they advised DOE auditors how to proceed with specific investigations of suspected wrongdoers – *i.e.*, the lawyers prepared them 'in anticipation of litigation' – from other documents that were "'neutral, objective analyses of agency regulations'" and therefore unprotected by the privilege." *Id.* (citations omitted).  *See also Delaney, Migdail & Young, Chartered v. Internal Revenue Service*, 826 F.2d 124, 127 (D.C. Cir. 1987)

(distinguishing documents akin to "an agency manual, fleshing out the meaning of the statute [the agency] was authorized to enforce," which do not fall within the scope of the work-product privilege, from "more pointed documents" which "advise the agency of the types of legal challenges likely to be mounted against a proposed program, potential defenses available to the agency, and the likely outcome," which are entitled to work-product protection).

Ultimately, "[t]he primary purpose for the creation of the document is the critical issue." *Heggestad v. U.S. Dep't of Justice*, 182 F. Supp. 2d 1, 7 (D.D.C. 2000) (citing *Delaney*, 826 F.2d at 127). The Circuit's decision in *Jordan v. U.S. Dep't of Justice* is particularly instructive in this regard. 591 F.2d 753 (D.C. Cir. 1978) (en banc), *overruled in part on other grounds*, *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051 (D.C. Cir. 1981) (en banc). In *Jordan*, a law student brought suit under the Freedom of Information Act seeking disclosure of two documents relating to the exercise of prosecutorial discretion by the United States Attorney for the District of Columbia – a manual containing specific guidelines and criteria which Assistant United States Attorneys were instructed to consider in handling certain offenses[11] and a 6-page memorandum entitled "Pre-Trial Diversion Guidelines" setting forth the criteria for eligibility in three separate pretrial diversion programs. *Id*. at 757. The Department of Justice argued, *inter alia*, that the material constituted privileged work-product of the United

---

[11] Specifically, the guidelines contained in the manual were described by the Court as covering the following subjects: "(1) situations in which non-prosecution is warranted for certain sex-related offenses; (2) situations in which selective prosecution is warranted for certain narcotic and larceny offenses depending upon quantitative considerations, *i.e.* the amount of narcotics possessed or value of property stolen; (3) guidelines for the selection of appropriate charges from among available alternative charges depending upon certain factual considerations, *e.g.*, the nature and extent of injuries and the type of weapon involved; (4) recommended criteria in considering eligibility for first offender treatment; and (5) situations warranting certain internal prosecutorial action, *e.g.*, the initiation of a five-day hold under D.C. Code, § 23-1322(e) or reduction of charges brought against defendants who are police informants." *Jordan*, 591 F.2d at 757 (internal citations omitted).

States Attorney's Office and was therefore covered by Exemption 5. *Id.* at 775. The Court

found this argument without merit, explaining:

> The work-product rule does not extend to every written document generated by an attorney; it does not shield from disclosure everything that a lawyer does. Its purpose is more narrow, its reach more modest. The Supreme Court articulated the rule's rationale in the *Hickman* case:
>
>> Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.
>
> It is clear from this statement that the purpose of the privilege is to encourage effective legal representation *within the framework of the adversary system* by removing counsel's fears that his thoughts and information will be invaded by his adversary. In other words, the privilege focuses on the integrity of the adversary trial process itself and seeks to ensure that such proceedings do not degenerate into mere "battles of wits." This focus on the integrity of the trial process is reflected in the specific limitation of the privilege to materials "prepared in anticipation of litigation or for trial."

*Id.* at 775. Applying these standards, the Court found that the manual and guidelines sought by

the plaintiff did not deserve work-product protection because they were not prepared in

anticipation of a particular trial, or even in anticipation of trials in general. More specifically, the

Court explained that the documents "were promulgated as general standards to guide the

Government lawyers in determining whether or not to bring an individual to trial," "[did] not

relate to the conduct of either on-going or prospective trial," and "[did] not include factual

information, mental impressions, conclusions, opinions, legal theories or legal strategies relevant

to any on-going or prospective trial." *Id.* at 775-776. For these reasons, the Court concluded

that the manual and guidelines "would not be privileged as 'work products' in the civil discovery

and therefore, the Justice Department's Exemption 5 claim must fail to the extent that it is

predicated on this privilege." *Id*. at 776.  Notably, the Court in *Jordan* was careful to note that the plaintiff there did *not* seek access to "documents reflecting the reasons for prosecution or non-prosecution in particular cases or explaining such decisions" but rather, only sought "policy guidelines and manuals of *general* applicability, established prior to and independently of a prosecutorial decision in any particular case." *Id*. (emphasis in original)

As in *Jordan*, the documents at issue here appear to the Court to have been promulgated as "general standards" to instruct ICE staff attorneys in determining whether to exercise prosecutorial discretion in specific categories of cases.  For example, DHS0010 is a page from Goldman's August 12, 2010 Memorandum to attorneys within OCC Houston, which DHS itself describes in its briefing as "instruct[ions] … about how to handle (and in some factual circumstances, exercise prosecutorial discretion by moving to dismiss) cases falling into priorities one, two and three."  Def.'s Mem. at 15.  The Second *Vaughn* Index asserts protection under the work-product privilege due to the fact that the memorandum reflects advice and direction on how to handle "cases of the type specifically contemplated" therein, which was "intended to be applied to the attorneys' then current caseload."  Second *Vaughn* Index at 2.  But this is not enough to invoke the privilege.  While the memorandum may be, in a literal sense, "in anticipation of litigation" – it simply does not anticipate litigation in the way the work-product doctrine demands, as there is no indication that the document includes the mental impressions, conclusions, opinions, or legal theories of Goldman, or any other agency attorney, relevant to any specific, ongoing or prospective case or cases.  *See Jordan*, 591 F.2d at 775-776; *see also American Immigration Council v. U.S. Dep't of Homeland Security*, 2012 WL 5928643, *11-12 (D.D.C. Nov. 27, 2012) (finding that PowerPoint slides that the Office of the Chief Counsel used to teach United States Citizenship and Immigration Services employees about interacting with

private attorneys during proceedings before adjudicators did not merit work-product protection because the "lawyers prepared the slides to convey routine agency policies."). Rather, the evident purpose of the memorandum was to convey agency policies and instructions regarding the exercise of prosecutorial discretion in civil immigration enforcement. "The fact that those policies happen to apply in agency litigation does not shield the [memorandum] from disclosure." *American Immigration Council*, 2012 WL 5928643 at \*11. To hold otherwise would constitute an over-broad reading of the work-product exemption which, in view of the fact that "the prospect of future litigation touches virtually every object of a prosecutor's attention," could preclude almost all disclosure from an agency with responsibilities for law enforcement." *SafeCard Servs., Inc. v. Secs. & Exch. Comm'n*, 926 F.2d 1197, 1203 (D.C. Cir. 1991) (quotation marks and citation omitted).

Nearly all of the other challenged work-product redactions suffer from the same fundamental infirmity as DHS0010. *See* DHS0031-0035 (a copy of the August 25, 2012 Memorandum, which the Second *Vaughn* Index states "describes the advice and direction Goldman gave to his attorney staff in his since-rescinded August 12 memo" on "how to handle" "cases of the type specifically contemplated in the memo"); DHS0058-0059 (a document described by DHS in its briefing as a "manual distributed to attorneys within OCC Houston [which] issues instructions on steps to take in both cases where prosecutorial discretion is appropriate and cases where prosecutorial discretion is inappropriate," Def.'s Mem. at 15, and described in the Second *Vaughn* Index as containing guidance on the exercise of prosecutorial discretion in "typically handled cases"); DHS0062 (described in the Second *Vaughn* Index as an e-mail to OCC Houston attorneys relaying guidance provided during a meeting with OPLA

leadership and various Chief Counsel offices on prioritization of case loads and the exercise of prosecutorial discretion in "typically handled cases").

Indeed, of the five documents remaining for the Court's consideration with respect to the work-product doctrine, the Court finds that only two sections of information were properly withheld – that is, the information redacted from the middle of DHS0034 and the information redacted from the bottom of DHS0053. The Court so finds because, as the Second *Vaughn* Index makes clear, such information is akin to information the Court previously found protectable as work-product in the spreadsheets bearing stamps DHS0201-0202, DHS0203-0235, and DHS0236-0237 – *i.e.*, it was "derived from attorney notes" and indicative of OCC Houston attorneys' reasons for declining to prosecute in specific cases handled by the office. *See* Second *Vaughn* Index at DHS0034 ("The information redacted from the middle of DHS0034 derives from attorney notes and case files regarding cases handled by the office; this is the same sort of information that is reflected in the three spreadsheets (DHS0201-02, DHS0203-35, and DHS0236-37)."); *id.* at DHS0053 ("The withheld text on DHS0053 constitutes the reasons why prosecutorial discretion was exercised by OCC Houston attorneys in various cases" and "derives from attorney notes and case files regarding actual cases handled by the office.").

In view of the foregoing descriptions, the Court is satisfied that DHS has met its burden of showing that the information redacted from the middle of DHS0034 and from the bottom of DHS0053 was prepared in anticipation of the pending immigration cases handled by OCC Houston and was therefore lawfully withheld pursuant to the attorney work-product doctrine. *See Jordan*, 591 F.2d at 776 (distinguishing, in *dicta*, between "policy guidelines and manuals of *general* applicability, established prior to and independently of a prosecutorial decision in any particular case" and "documents reflecting the reasons for prosecution or non-prosecution in

particular cases or explaining such decisions").  However, because DHS has failed to make a similar showing with respect to the remainder of the disputed withholdings from the five documents at issue in this category, the Court shall order DHS to disclose that information.

### C. The Attorney-Client Privilege

"The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services," as well as "communications from attorneys to their clients if the communications rest on confidential information obtained from the client." *Tax Analysts v. Internal Revenue Serv.*, 117 F.3d 607, 618 (D.C. Cir. 1997) (quotation marks omitted).  In order to demonstrate the applicability of the privilege, the proponent must establish each of the following essential elements: (1) the holder of the privilege is, or sought to be, a client; (2) the person to whom the communication is made is a member of the bar or his subordinate and, in connection with the communication at issue, is acting in his or her capacity as a lawyer; (3) the communication relates to a fact of which the attorney was informed by his client, outside the presence of strangers, for the purpose of securing legal advice; and (4) the privilege has been claimed by the client.  *In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984).  A "fundamental prerequisite to the assertion of the privilege" is "confidentiality both at the time of the communication and maintained since."  *Coastal States*, 617 F.2d at 863; *accord Fed. Trade Comm'n v. GlaxoSmithKline*, 294 F.3d 141, 146 (D.C. Cir. 2002).

"In the governmental context, the 'client' may be the agency and the attorney may be the agency lawyer."  *Tax Analysts*, 117 F.3d at 618; *accord Coastal States*, 617 F.3d at 863 (The attorney-client privilege, as incorporated by Exemption Five, applies when "the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests, and needs the same assurance of confidentiality so it will not be deterred from full and frank

communications with its counselors."). It is well-established, however, that not every communication between an attorney and a client – government or otherwise – is made "for the purpose of securing legal advice or services." As this Circuit has explained, "consultation with one admitted to the bar but not in that other person's role as a lawyer is not protected." *In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998) (per curiam) (citations and quotes omitted). Hence, a government attorney's "advice on political, strategic, or policy issues, valuable as it may [be], would not be shielded from disclosure by the attorney-client privilege." *Id*.

Judicial Watch contests DHS's reliance on the attorney-client privilege as a basis for withholding information from a total of sixteen documents – specifically, DHS0010, DHS0031-0035, DHS0053-0054, DHS0058-0059, DHS0062, DHS0063, DHS0064, DHS0065-0066, DHS0067-0068, DHS0069, DHS0070-0071, DHS0080-0081, DHS0082, DHS0085, DHS0093, and DHS0112. *See* Pl.'s Opp'n at 11. Once again, based on the Court's reading of the Second *Vaughn* Index, it appears that there exists substantial overlap between the information redacted from these documents on the basis of the deliberative process privilege and/or the work-product doctrine and that redacted pursuant to the attorney-client privilege. Specifically, DHS appears to have asserted the deliberative process privilege as an alternative basis for withholding the same portions allegedly protected by the attorney-client privilege in the following documents: DHS0063, DHS0064, DHS0065-0066, DHS0067-0068, DHS0069, DHS0070-0071, DHS0080-0081, DHS0082, DHS0085, DHS0093, and DHS0112. Because the Court has found, for reasons stated *supra* Part III.A, that DHS has permissibly invoked the deliberative process privilege with respect to the information withheld from these documents, the Court need not, and in the interest of judicial economy, shall not address the propriety of DHS's assertion of the attorney-client privilege with respect to this same information. Similarly, because the Court has found that DHS

has lawfully redacted certain information from DHS0053-0054 pursuant to the deliberative process privilege, *see supra* Part III.A, and has properly relied upon the work-product doctrine with regard to the remainder of the information redacted from that document, *see supra* Part III.B, the Court also shall not address the propriety of DHS's assertion of the attorney-client privilege with respect to DHS0053-0054.   Accordingly, all that remains for the Court's resolution with respect to the attorney-client privilege are the following four documents: DHS0010, DHS0031-0035, DHS0058-0059, DHS0062.

In opposing DHS's first motion for summary judgment, Judicial Watch argued – and this Court agreed – both that DHS had failed to provide a sufficient basis for the Court to find that the confidentiality of the communications at issue had been maintained, and that, in any event, that DHS's generalized and non-specific descriptions of the withheld information failed to establish that the attorney-client privilege had been properly invoked.  *See Judicial Watch*, 841 F. Supp. 2d at 154-55.   DHS has since taken significant measures to cure the first of these deficiencies.   *See* Def.'s Second Stmt. ¶¶ 56-64; Second Agency Decl. ¶¶ 9-14 (describing efforts made to identify and contact all fifty-two senders and/or recipients of the documents to ensure that the information contained therein had not been transmitted outside of the agency, or outside of agency counsel).  Indeed, Judicial Watch has conceded that due to these efforts, DHS has now adequately demonstrated that the confidentiality of these documents has been maintained and that the redacted information has not been shared with third parties.  *See* Pl.'s Mem. at 11.

However, Judicial Watch argues that there remains the more far-reaching problem with DHS's showing in that the allegedly privileged information at issue here does not concern a matter for which the client is seeking legal advice.  *Id.*; Pl.'s Reply at 4.  Rather, Judicial Watch

contends that the discussions contained within these documents are "discussions about a policy" – specifically, discussions regarding the "formulat[ion] of general guidelines about improving the overall efficiency of immigration litigation." Pl.'s Mem. at 11.  The Court agrees.  Indeed, as has already been established in connection with the Court's above work-product analysis of each of the four remaining documents –  DHS0010, DHS0031-0035, DHS0058-0059, and DHS0062 – each of these documents, as described by DHS in its *Vaughn* Index and briefing (and as apparent from the face of many of the redacted documents themselves) provides guidance on the prioritization of cases and instructions regarding scenarios under which ICE attorneys should, or should not, exercise prosecutorial discretion.  *See supra* Part III.B.  Put differently, each of these documents appears to concern nothing more than the implementation of an agency policy, the withholding of which runs counter to the Circuit's admonition that a government attorney's "advice on political, strategic, or policy issues [is] not … shielded from disclosure by the attorney-client privilege."  *In re Lindsey*, 148 F.3d at 1106.  *See also Tax Analysts*, 117 F.3d at 619 (holding that the Internal Revenue Service could not invoke the attorney-client privilege to shield documents prepared by its counsel "when the counsel rendering the legal opinion in effect is making law").  DHS's Second *Vaughn* Index and agency declarations have not identified a single instance in which the communication contained within the documents "relates to a fact of which the attorney was informed by his client … *for the purpose of securing legal advice*."  *In re Sealed Case*, 737 F.2d at 98.

Finally, even putting aside the evident purpose of the communications, the DHS has failed to demonstrate that the communications themselves rest on confidential information obtained from the client.  As this Court stated in its prior Memorandum Opinion, "where, as here, an agency cites the attorney-client privilege as a basis for withholding communications

running from the attorney to the client," such communications are "eligible for protection only if they rest on confidential information obtained from the client." *Judicial Watch*, 841 F. Supp. 2d at 154 n.7 (citing *Tax Analysts*, 117 F.3d at 618). *See also Mead*, 566 F.2d at 253 (finding certain documents unprotected by the attorney-client privilege because the withholding agency failed to demonstrate that the withheld documents contained or related to information that the client intended to keep confidential and thus failed to establish an essential element of the privilege).

Here, DHS's *Vaughn* Index offers only conclusory assertions of confidential client information such as the "types of cases likely to be handled" in a particular office, Second *Vaughn* Index at DHS0009-12, and the "proper procedures to be followed regarding prosecutorial discretion," *id*. at DHS0062 – which, by any objective measure, are not confidential in the manner the privilege requires. Nor do the documents themselves appear to intimate underlying confidentialities.

Because DHS has failed, once again, to affirmatively establish each of the essential elements of the attorney-client privilege with respect to DHS0010, DHS0031-0035, DHS0058-0059, and DHS0062, the Court shall order that DHS release to Judicial Watch unredacted versions of those documents (with the exception of the information redacted from the middle of DHS0034, which the Court found above to be lawfully withheld pursuant to the work-product doctrine).

## IV.  CONCLUSION

For all of the foregoing reasons, the Court shall **GRANT-IN-PART** and **DENY-IN-PART** DHS's Renewed Motion for Summary Judgment and **GRANT-IN-PART** and **DENY-IN-PART** Judicial Watch's Cross-Motion for Summary Judgment.  Specifically, the Court shall

grant DHS's motion insofar as it seeks a ruling that it has lawfully withheld information from the challenged documents pursuant to the deliberative process privilege. The Court also grant's DHS's motion insofar as it seeks a ruling that the information redacted from the middle of DHS0034 and the information redacted from the bottom of DHS0053 was lawfully withheld pursuant to the work-product doctrine. DHS's motion is otherwise denied. Correspondingly, the Court grants Judicial Watch's motion insofar as it seeks an order compelling DHS to disclose to it all information withheld on the basis of the work-product doctrine from DSH0010; DHS0031-0035 (with the exception of information redacted from the document pursuant to the deliberative process privilege and information redacted from the middle of DHS0034, which was lawfully withheld pursuant to the work-product doctrine); DHS0053-0054 (with the exception of information redacted from the document pursuant to the deliberative process privilege and information redacted from the bottom of DHS0053, which was lawfully withheld pursuant to the work-product doctrine); DHS0058-0059; and DHS0062. The Court also grants Judicial Watch's motion insofar as it seeks an order compelling DHS to disclose to Judicial Watch all information withheld on the basis of the attorney-client privilege from DHS0010, DHS0031-0035, DHS0058-0059, and DHS0062, insofar as that information is not otherwise protected by DHS's lawful assertions of the deliberative process and work-product privileges. Judicial Watch's motion is otherwise denied.

Because no factual disputes exist, and all legal disputes have been resolved by the Court, this case is hereby dismissed. An appropriate Order accompanies this Memorandum Opinion.

Date: February 28, 2013

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge
